**NATIONAL ASSOCIATION OF CON-CERNED VETERANS et al.**

v.

**SECRETARY OF DEFENSE et al.**

Civ. A. No. 79–0211.

United States District Court,
District of Columbia.

Nov. 16, 1979.

Barton F. Stichman, David F. Addlestone, National Veterans Law Center, Washington, D. C., for plaintiffs; Stephanie Klein, Kitty Juniper, law students, of counsel.

Earl J. Silbert, U. S. Atty., Royce C. Lambreth, Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., for defendants; Colonel Arnold I. Melnick, Lt. Colonel Barry P. Steinberg, Captain Roy Dodson, Office of the Judge Advocate General, Washington, D. C., of counsel.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion for summary judgment or, in the alternative, dismissal. In addition, plaintiffs have also moved for certification as a class action. The Court is persuaded that a limited certification is appropriate and further, that the class is entitled to injunctive relief with respect to one portion of its motion for a preliminary injunction. The Court also finds that the defendants' motion for summary judgment or dismissal

should be granted in all respects, except for the publication of Annex H and the indexing of Annexes C1, D & F. Before discussing the merits of the motions which the parties have filed, the Court briefly summarizes the background of this litigation.

## I. BACKGROUND

Plaintiffs, two nonprofit organizations and seven individuals, have instituted a three-pronged legal assault on the Discharge Review Boards of the various branches of the armed services. The individual plaintiffs consist of three currently enlisted members of the Armed Forces and four veterans, three of whom retain Undesirable Discharges and are eligible to apply to a Discharge Review Board for recharacterization. The fourth veteran retains a less than Honorable Discharge, having unsuccessfully applied for an upgrade. The organization plaintiffs, the National Association of Concerned Veterans ("NACV") and the National Military Discharge Review Project are devoted to advancing the interests and rights of veterans; as part of their activities, the organizations are concerned with the legal process surrounding the Discharge Review Boards. The defendants in this action are the Secretary of Defense, the Department of Defense and the Departments of the Army, Navy and Air Force.

The Discharge Review Boards established by the various branches of the armed services are the focal point of this suit. Upon separation from active duty service, veterans may receive one of three types of administrative discharges: 1) Honorable; 2) General or Under Honorable Conditions ("General"); or 3) Undesirable or Under Other than Honorable Conditions ("Undesirable"). The administrative discharge program does not include punitive discharges—Bad Conduct Discharges or Dishonorable Discharges—which are imposed only as part of a special or general court-martial sentence following conviction. An individual holding either an Honorable or a General Discharge is eligible for all benefits under laws administered by the Veterans Administration. An Undesirable Discharge not

only entitles a veteran to no benefits but also carries a serious stigma in civilian activities. Pursuant to 10 U.S.C. § 1553, each military department has established a Discharge Review Board ("DRB") with power to review, modify or correct administrative discharges. The DRB panels are comprised of five officers each and their decisions are subject to review and modification by the appropriate Secretary.

Plaintiffs' seventeen-count complaint is divisible into three broad areas. First, in count I, plaintiffs assert that the various branches of the armed services have failed to comply with the mandate of 38 U.S.C. § 3103(e)(1). This provision states that changes in discharge status shall result in the accrual of veterans' benefits only when the DRB making the upgrade acts "under published uniform standards (which shall be historically consistent with criteria for determining honorable service and shall not include any criterion for automatically granting or denying such change or issuance) and procedures generally applicable to all persons." Second, counts II through IV are brought essentially under the Freedom of Information Act, 5 U.S.C. §§ 552(a)(1) & (2); these counts seek to compel the publication or distribution of certain rules which the plaintiffs contend are generally applied throughout the discharge review process. Plaintiffs also demand that these rules be indexed and that all DRB applicants receive actual notice of their contents through the mail. Finally, counts V through XVII concern certain rulemaking petitions filed with the defendants pursuant to 5 U.S.C. § 553(e). Plaintiffs contend that, by law, the DRBs must not only apply these rules in their adjudications, but also issue them as part of a formal rulemaking proceeding. Accordingly, they seek to compel the defendants to publish and adopt the proposed rules.

Plaintiffs have moved for a preliminary injunction with respect to counts II through IV, their claims under the Freedom of Information Act. Defendants have moved for summary judgment or, in the alternative, dismissal of all aspects of plaintiffs' complaint. Defendants also submit that the plaintiffs lack standing and do not merit class certification. The Court, however, is persuaded that some of the plaintiffs possess standing and further, that limited class certification is appropriate. The Court also grants in part plaintiffs' motion for a preliminary injunction. Defendants' motion for summary judgment or dismissal is granted with respect to plaintiffs' rulemaking petitions, and their claim under 38 U.S.C. § 3103, and several of their claims under the Freedom of Information Act.

## II. PRELIMINARY MATTERS

### A. *Standing*

The Court finds that several of the individual plaintiffs possess standing to bring their claims under the Freedom of Information Act (counts II through IV demanding, *inter alia*, publication in the Federal Register) and the Administrative Procedure Act (counts V through XVII seeking adoption of proposed rules). However, the Court also concludes that this particular group of plaintiffs lacks standing to seek redress under 38 U.S.C. § 3103, the statute which requires the defendants to review discharges under "published uniform standards." The NACV, however, does possess standing to raise this issue. Accordingly, defendants' motion to dismiss for lack of standing is denied.

1. *Freedom of Information Act and Administrative Procedure Act Claims.*

Defendants' contention that plaintiffs lack standing to bring suit under both the Freedom of Information Act and the Administrative Procedure Act is easily resolved. In *Natural Resources Defense Council, Inc. v. SEC*, 196 U.S.App.D.C. 124, at 135, 606 F.2d 1031, at 1042 (D.C. Cir.1979), the court of appeals for this circuit held that owners of corporate shares who were interested in voting "in a financially prudent and ethically sound manner" had standing to seek to compel the SEC to conduct proceedings incident to their petitions for rulemaking under the Administrative Procedure Act. The court concluded, "Their interest was judicially cognizable,

personal to them, and was arguably impaired by the lack of . . . information." *Id.,* at 135, 606 F.2d at 1042. Here, three plaintiffs, Jamal Mahdi, Revis Hudson, and Reginald Dockett, retain Undesirable Discharges and thus are eligible to apply to the appropriate DRB for recharacterization. Both Mahdi and Hudson petitioned the Department of Defense to adopt the rules proposed in counts V through XVII and all three individuals are arguably harmed by the defendants' failure to adopt the proposed rules. Absent these purportedly mandatory reforms, their pursuit of a just result from a DRB would be seriously impaired. Thus, the injury which they have suffered could well be redressed by a favorable opinion from this Court; as a result, the exercise of the Court's remedial powers would not be gratuitous. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). In sum, these individuals possess a personal stake in the outcome of the controversy sufficient to warrant the invocation of federal court jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). Because these three individuals possess standing to bring the claims asserted in counts V through XVII of the complaint, the Court need not resolve the rights under article III of either the organization plaintiffs or the remaining individuals. Accordingly, defendants' motion to dismiss counts V through XVII for lack of standing shall be dismissed.

Plaintiffs also have standing to bring their Freedom of Information Act claims. Indeed, the Court is unaware of any traditional standing requirement in such suits. Congress certainly possesses the power to clarify and define the rights of individuals under article III of the Constitution and it plainly intended that *anyone* could sue under the Act. Thus, the plaintiffs have standing to bring counts II through IV.

2. *Plaintiffs' Claim Under 38 U.S.C. § 3103.*

■ Count I of plaintiffs' complaint seeks redress under 38 U.S.C. § 3103(e)(1). This statute provides in pertinent part:

Notwithstanding any other provision of law, (A) no benefits under laws administered by the Veterans' Administration shall be provided, as a result of a change in or new issuance of a discharge under section 1553 of title 10, except upon a case-by-case review by the board of review concerned, subject to review by the Secretary concerned, under such section, of all the evidence and factors in each case under *published uniform standards* (which shall be *historically consistent* with criteria for determining honorable service and shall not include any criterion for automatically granting or denying such change or issuance) and procedures generally applicable to all persons administratively discharged or released from active military, naval, or air service under other than honorable conditions . . . .

38 U.S.C. § 3103(e)(1)(A) (emphasis added). Essentially, plaintiffs assert that in each branch of the armed services, the discharge processes apply different standards. As a result, the percentages of Honorable, General and Undesirable Discharges vary widely from service to service, and even from year to year within a particular branch. Plaintiffs complain that the defendants have violated the "uniformity" requirement of section 3103(e)(1) because they have not promulgated rules stringent enough to force the DRBs to eliminate intra-service inconsistencies in the discharge process. In other words, plaintiffs contend that although Congress intended this statute to cure the inequity of intra-service discrepancies, the defendants have promulgated rules which are lax enough to maintain a status quo. Defendants submit that the nine plaintiffs lack standing to assert this claim. The Court is persuaded that the latter assertion is correct as to all but one of the plaintiffs.

In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Supreme Court ruled that a plaintiff's ability to ob-

tain a remedy which had a realistic potential of correcting his alleged injury was an integral part of the article III standing doctrine. Here, six of the individual plaintiffs have never applied to a DRB and thus, there is no indication that court-ordered "uniformity" will be of benefit to them: at separation or on review, they may receive either Honorable Discharges or Discharges which would not be changed under the proposed uniform rules. The seventh individual plaintiff, Mr. Daniel Lampkins, has applied for an upgrade and been refused. Yet, in his complaint, he does not assert that the new "uniform" rules will result in any change in his present status. Thus, like the other six individual plaintiffs, he fails to satisfy the *Simon* requirement that the remedy sought will cure the injury suffered.

The National Military Discharge Review Project ("NMRDP") also lacks standing. First, this organization has no members and thus is unable to assert their interests. In addition, because it cannot apply to a DRB itself, it is incapable of suffering injury at the hands of a DRB. The National Association of Concerned Veterans ("NACV"), however, does possess standing to seek enforcement of 38 U.S.C. § 3103. The NACV has alleged that its membership includes veterans who have applied for a discharge upgrade and been refused. Among this group, there must surely be some individuals who would benefit from the elimination of the alleged inequity. In *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975), the Supreme Court declared that an organization's complaint satisfies the requirements of article III when it alleges "that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." The NACV plainly meets this test. Accordingly, the Court grants defendants' motion to dismiss for lack of standing as to all plaintiffs except the NACV.

### B. *Class Certification*

Plaintiffs seek to represent a class comprising all current service members, or their next of kin, who are (i) still eligible to apply to, or have an application pending before, a Military Discharge Review Board or (ii) still retain a less than Honorable Discharge and have been denied complete relief in the past. The Court is persuaded that for counts II through XVII, certification is proper for the first sub-class, but not for the second sub-class. Certification is inappropriate for count I, the claim under 38 U.S.C. § 3103(e)(1).

### 1. *Counts II through XVII: Freedom of Information Act and Administrative Procedure Act Claims.*

Plaintiffs' first sub-class consists of those who may, at some future date appear before a DRB. The former servicemen who retain less than Honorable Discharges certainly possess claims typical of this class of persons. The question of law raised by their complaints are virtually identical to those of other class members; moreover, the number of individuals concerned certainly satisfies the "numerosity" requirement. Accordingly, the Court shall certify plaintiffs' first proposed sub-class as a valid class under Federal Rule of Civil Procedure 23(b)(2).

Plaintiffs' second proposed sub-class, however, falls short of the requirements of Rule 23. This class would consist of all service members, or their next of kin, who still retain less than Honorable Discharges and have been denied complete relief by a DRB in the past; the members of this class seek to enjoin future violations and also to benefit from the retroactive application of such injunctive relief. To the extent that members of this second group seek to prevent prospective violations of the laws governing DRBs, their claims are fully protected through the representation provided by the first sub-class. Thus, class certification in this area would be superfluous. Retroactive injunctive relief—the opportunity to seek recharacterization of a discharge—is not properly sought by this class for two

reasons. First, the proposed class representatives do not possess claims which are representative of the class' claims. The only two parties offered as class representatives for this portion of plaintiffs' claims are Daniel Lampkins and the National Association of Concerned Veterans. Although Mr. Lampkins has received a denial of discharge recharacterization from a DRB, there is absolutely no proof that he would benefit from the retroactive application of the changes sought by the plaintiffs. Under the Freedom of Information Act, agency action pursuant to unpublished, albeit generally applicable, rules has no impact, except to the extent that the affected individual had actual notice of the rule. Here, there has been no allegation that any of the specific rules which plaintiffs seek to have published adversely affected Mr. Lampkins' DRB application. Nor has there been an allegation that he lacked actual knowledge of these rules. Yet, in order for members of the plaintiff class to recover under 5 U.S.C. § 552(a)(1), they would have to prove both causation and lack of knowledge. Mr. Lampkins is clearly not an adequate class representative because his complaint fails to allege these two vital elements.

The National Association of Concerned Veterans ("NACV") is equally unfit to represent this proposed class. Because this organization cannot be a member of the proposed class, a fortiori, it cannot represent the class. The NACV is incapable of filing an application with a DRB, and thus, it may not state a valid claim for retroactive relief under the Freedom of Information Act. Here, the NACV is simply not "a person . . . adversely affected by a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a)(1) (1976) (emphasis added).

In addition to their deficiencies under the typicality requirement of rule 23(a)(3), Mr. Lampkins and the NACV are also incapable of adequately protecting the interests of the class. The class which they seek to certify is full of divergent interests and there has been absolutely no showing that either Mr. Lampkins or the NACV—neither of whom possess typical claims—can represent this group. Accordingly, the Court finds plaintiffs' proposed sub-class also falls short of rule 23(a)(4), Fed.R.Civ.P.

Although the Court has only addressed the inadequacies of the second proposed sub-class with respect to plaintiffs' Freedom of Information Act claims for retroactive relief, the Court's reservations are fully applicable to plaintiffs' claims under the Administrative Procedure Act. Again, there has been no showing that either the NACV or Mr. Lampkins were ever denied relief by a DRB as a result of the specific rules which the Department of Defense declined to adopt. Absent this sort of injury, neither party may have a valid claim for the retroactive injunctive relief sought by the class. Thus, plaintiffs are, again, inadequate class representatives and atypical of their proposed fellow claimants.

To summarize, with respect to counts II through XVII, the proposed class shall be certified to the extent that it seeks injunctive relief capable of preventing future wrongs. Based on this complaint, however, the Court will not certify a class comprising individuals who seek to have their discharge recharacterization subject to further review by a DRB. Thus, the Court grants in part and denies in part plaintiffs' motion for class certification.

The class now before the Court, on counts II through XVII, consists of:

all current service members in the United States armed forces and all former service members, or their next of kin, who are eligible to apply to, or have an application pending before, a military Discharge Review Board.

2. *Count I: NACV's Claim under 38 U.S.C. § 3102(e)(1).*

■ The Court has already ruled that only the NACV has standing to assert count I of plaintiffs' complaint and as a result, this organization is the only party who may offer to serve as a class representative for this count. The Court, however, has already explained the inadequacy of the NACV as a representative for the proposed

sub-class seeking retroactive relief. All of the reasons stated in that explanation are fully relevant here and they preclude NACV from serving as a representative for both of the proposed sub-classes. Although NACV may possess standing to raise the interests of its members, it could not be a member of either proposed sub-class, a fortiori, it may not represent such a class under Federal Rule of Civil Procedure 23. Accordingly, with respect to count I, plaintiffs' motion for class certification shall be denied.

## III. THE COURT GRANTS IN PART PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION.

Plaintiffs have moved for a preliminary injunction with regard to counts II through IV of their complaint. Relying on 5 U.S.C. § 552(a)(1), they seek to compel the defendants to publish certain rules in the Federal Register. For convenience, these rules have been marked Annexes A through H. In the alternative, they ask that these rules be made available for public inspection and copying under 5 U.S.C. § 552(a)(2). Defendants have recently published several of plaintiffs' rules in the Federal Register, thereby rendering moot certain portions of the motion for preliminary injunction. *See* Army Discharge Review Board; Standard Operating Procedures, 44 Fed.Reg. 25046 (1979) (filed as Annexes A, C2 & G to plaintiffs' complaint). In addition to publication, plaintiffs' motion also seeks to compel the defendants to maintain an index of the material in the annexes and to provide DRB applicants with actual notice of this material by mailing letters to them which contain the substance of the annexes. The Court is persuaded that plaintiffs' motion should be granted only to the extent that it requests publication of Annex H. The motion, however, is denied with respect to all other publishing, indexing and mailing.

Defendants have also moved for summary judgment or, in the alternative, dismissal. The Court finds that this motion must be granted, except as to the publication of Annex H and the indexing of Annexes C1,

D & F. The Court shall review plaintiffs' motion, annex by annex, discussing defendants' motion where relevant.

A. *Publication in the Federal Register*

■ The standard which this Court must apply in ruling on a motion for preliminary injunction is set out in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App.D.C. 220, 559 F.2d 841 (D.C.Cir.1977). To determine the propriety of preliminary injunctive relief, the Court must weigh four factors: 1) the likelihood that plaintiffs will prevail on the merits; 2) the prospect of irreparable injury; 3) the possibility of harm to the defendants if the motion is granted; and 4) the public interest. The considerations raised by these last three factors are generally the same for all of the annexes, which plaintiffs contend should be published. First, as prospective applicants to DRBs, plaintiffs will certainly suffer irreparable injury if they are required to present their petitions without full knowledge of the relevant substantive and procedural rules. The impairment of case presentation, which would result from the allegedly illegal nondisclosure, could well lead to an adverse decision from the board; both the social stigma accompanying a less than Honorable Discharge and the attendant loss of veterans benefits are surely injuries sufficient to satisfy the *Washington Metropolitan* standard. Moreover, the possibility that publication may harm the defendant is remote. Finally, the public interest clearly lies in the fullest disclosure of rules governing DRB conduct.

Once three of the relevant criteria have been satisfied the only matter which the Court must resolve is whether "the movant has made a substantial case on the merits." 182 U.S.App.D.C. at 222, 559 F.2d at 843. This determination, of course, can only be made with reference to each specific annex. However, prior to evaluating the individual annexes, the Court provides the following summary of the standard which it must apply under 5 U.S.C. § 552(a)(1) in weighing the merits of plaintiffs' claims.

Section 552(a)(1)(D) of title 5, United States Code, provides:

Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

.       .       .       .       .

D. substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; . . .

■ In *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), the Supreme Court recognized that eligibility requirements issued by the Bureau of Indian Affairs were "substantive rules of general applicability" which could have no effect absent publication. The Court explained, "The Administrative Procedure Act was adopted to provide, *inter alia*, that administrative policies affecting the individual rights and obligations promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations." The standard under section 552(a)(1) is whether the rule at issue is either a statement of "*general* policy" or an interpretation of "*general* applicability." In order to meet either requirement, the rule must have "a direct and significant impact upon the substantive rights of the general public or a segment thereof." *Lewis v. Weinberger*, 415 F.Supp. 652, 659 (D.N.M.1976); *see* K. Davis, *Administrative Law Treatise* §§ 3A.7 & 3A.9 (1970 Supp.); B. Mezines, J. Stein & J. Gruff 2 *Administrative Law* §§ 8.02[4] & 8.02[5] (1979 ed.). Finally, the court of appeals for this circuit has indicated that the Freedom of Information Act's publication requirements, 5 U.S.C. § 552(a)(1) are subject to direct enforcement under 5 U.S.C. § 552(a)(3). *American Mail Line, Ltd. v. Gulick*, 133 U.S.App.D.C. 382, 387, 411 F.2d 696, 701 (D.C.Cir.1969) ("Congressional intent (although not spelled out directly anywhere) seems to have been that judicial review would be available for a violation of any part of the Act, . . ."). Thus, if plaintiffs have made a substantial case that any of the annexes have the requisite impact, they are entitled to a preliminary injunction.

■ The Court turns now to a review of the individual annexes.

1. *Annex B: Discharge Review Standards on Recharacterization of Discharges for Drug Use or Possession.*

The material in this annex consists of four memoranda intended to provide guidance to DRBs in their review of administrative discharges under other than honorable conditions issued solely for personal drug use or possession of drugs prior to July 7, 1971. Defendants Department of Defense and Department of the Army recently published these memoranda in the Federal Register, 44 Fed.Reg. 25111 (1979), but plaintiffs contend that this publication is insufficient. Although the publication is intended to provide guidance to each service's DRB, the heading on the publication reads "DEPARTMENT OF DEFENSE/Department of the Army". Plaintiffs contend that this heading is misleading and as a result, Navy and Air Force DRB applicants are not adequately informed of the existence of these guidelines. Defendants submit that the caption is adequate.

The Court finds that the caption for the published rules satisfies section 552(a)(1). First, the memoranda published by the defendants clearly reflect "statements of general policy" within the meaning of 5 U.S.C. § 552(a)(1). These memoranda state that certain drug-related discharges will be subject to review for recharacterization and that only certain classes of individuals may seek review. Absent publication, many veterans would have no opportunity to discover whether they are eligible to benefit from a recharacterization of their discharge. Yet, plaintiffs' claim that the Departments of the Navy and Air Force have failed to meet their statutory obligations is without foundation. Although the caption on the publication may appear misleading to one unfamiliar with the DRB process, published DRB regulations provide explicitly for Army supervision of Navy and Air Force DRBs. Section 70.6(c)(2) of title 32, Code of Federal Regulations, designates the Secretary of the Army responsible for issuing

implementing directives to other DRBs and for including "appropriate documentation to effect publication in the FEDERAL REGISTER." Because these regulations make clear the status of the Department of the Army, the publication in Annex B was not misleading. Indeed, there can be no dispute over any material fact with respect to this annex. Once the Court has found publication adequate, it must award summary judgment to the defendants.

2. *Annex C1: Joint Motion and Stipulation of Settlement, Lipsman v. Brown, No. 76–1175 (D.D.C.Feb. 6, 1979).*

Annex C1 concerns Army rules for re-characterizing the discharges of those separated from service for character and behavior disorders (now called "personality disorders"). The rules which plaintiffs seek to have published are contained in the stipulation settlement of *Lipsman v. Brown,* No. 76–1175 (D.D.C. Feb. 6, 1978) (per Robinson, J.). *Lipsman* was a class action on behalf of former servicemembers who were discharged from the Army by reason of personality disorders; in settlement of the suit, the defendants agreed to revise their regulations, to apply the revision retroactively, and to provide all members with actual notice of the revision.

First, it is uncontested that the Department of the Army has complied with the stipulation settlement. Because all class members should have received actual notice of the revision, the danger of irreparable harm to the plaintiffs is remote. Thus, under *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., supra,* plaintiffs' claim is clearly deficient. The Court must deny plaintiffs' motion for a preliminary injunction with respect to Annex C1.

In addition, the Court finds that this stipulation settlement is not a "substantive rule of general applicability." Although the settlement may require *prospective* rule revisions, the Department of the Army has already published rules reflecting the settlement in the Federal Register. Thus, the

sole issue is one of retroactive relief to class members. Because this relief is confined to a limited class of plaintiffs, it does not appear "generally applicable" within the meaning of 5 U.S.C. § 552(a)(1). Accordingly, the Court shall grant summary judgment to the defendants.

3. *Annex D: Navy Rules on Discharge for Homosexuality.*

Annex D is captioned SECNAVINST 1900.9C (Jan. 20, 1976) and it sets forth guidelines governing the type of administrative discharge to be issued members of the Navy who engage in homosexual acts. The focus of these guidelines is discharge status; hence, they do not relate directly to the activity of the Navy DRB. It is uncontested, however, that the Navy DRB may refer to these guidelines in determining whether to upgrade the discharge of an individual who was separated from service prior to their enactment. *See, e. g.,* Navy Discharge Review Board Case No. MD–7X00092 (August 3, 1977). The Department of the Navy currently makes these guidelines publicly available; it also incorporates them, by reference, in published regulations concerning administrative discharges. *See* 32 C.F.R. § 730.12(b)(5) (1978).

Plaintiffs contend that the Navy's use of these guidelines in its discharge review process constitutes a statement of "general policy or an interpretation of general applicability formulated and adopted by the agency." The Court, however, is persuaded not simply that plaintiffs have failed to make a substantial case on the merits, but that the defendants are entitled to summary judgment.

Section 70.6(c)(1) of title 32, Code of Federal Regulations, states that a discharge may be inequitable if "it is determined that the policies and procedures under which the applicant was discharged differ in material respects from policies and procedures currently applicable on a Service-wide basis to discharges of the type under consideration." This statement of general policy clearly renders current discharge regulations relevant to DRB proceedings. Thus, plaintiffs'

assertion that the Department of the Navy applied Annex D in its review process without notifying applicants of its relevance is without foundation. Because the Court finds that the current regulations governing the Navy DRB's use of Annex D fully comply with 5 U.S.C. § 552(a)(1), it must award defendants summary judgment. Accordingly, plaintiffs' motion for a preliminary injunction shall be denied and defendants' motion for summary judgment granted.

4. *Annex E: Department of Defense Interpretations of the New Uniform Discharge Review Standards.*

Annex E consists of a memorandum from the Department of Defense, Office of General Counsel, regarding the implementation of certain regulations concerning the applicability of the presumption of regularity in the review of discharges for the good of the service. The memorandum is already printed in the Federal Register, but, like the guidelines in Annex B, it appears under the heading "DEPARTMENT OF DEFENSE/Department of the Army." 44 Fed.Reg. 25046, 25095 (1979). The difficulties raised by this memorandum are virtually identical to those which the Court encountered in analyzing Annex B. Although both annexes are generally applicable to all DRBs, plaintiffs submit that the publication appears to limit their effect to the Army DRB. They argue that the confusion which results from this heading precludes defendants' compliance with the requirements of 5 U.S.C. § 552(a)(1). For the reasons stated with respect to Annex B, the Court finds that the publication here is adequate. Accordingly, plaintiffs' motion for a preliminary injunction shall be denied and defendants' motion for summary judgment granted.

5. *Annex F: Navy Standards Regarding the Appropriateness of an Undesirable Discharge.*

Annex F provides an explanation of the procedures which the Navy employs in its administrative discharge process. Like the material in Annex D, which related to discharges for homosexuality, the Annex F guidelines pertain directly to the discharge process, and not the review of discharges. Yet, as with Annex D, the Navy DRB appears to follow 32 C.F.R. § 70.6(c)(1) (1978) and rely on these guidelines in determining whether to recharacterize a veteran's discharge. All of the Court's observations concerning Annex D are fully applicable to the material in Annex F. Accordingly, the Court shall deny plaintiffs' motion for a preliminary injunction with respect to the Annex F material and grant defendants' motion for summary judgment.

6. *Annex H (final seven pages): Air Force DRB Procedures and Definition of Terms Used by the Army DRB.*

This Annex consists of two separate items: 1) a memorandum from the Department of the Air Force, Office of the Assistant Secretary, regarding factors to be weighed in the review process and 2) a letter from the Secretary of the Army to United States Senator Alan Cranston regarding the clarification of certain terms used in the criteria for discharge review.

First, defendants contend that the critical material in the Air Force Memorandum has already been published in the Federal Register and as a result, the requirements of 5 U.S.C. § 552(a)(1) have already been met. It is clear, however, that the memorandum contains several interpretations which are not already available. Because these interpretations appear sufficiently general for the purposes of section 552(a)(1), the Court shall grant plaintiffs' motion with respect to this material.

Defendants contend that the second part of Annex H, the letter by the Secretary of the Army, need not be published because it was not intended to offer guidance to the Army DRB. Yet, on its face, the letter states that these are "directives" intended to clarify terms set forth in the "Criteria for Discharge Review." The Court is persuaded that these clarifications are also sufficiently general to satisfy the standard of 5 U.S.C. § 552(a)(1). Accordingly, with re-

spect to this letter, it shall grant plaintiffs' motion for a preliminary injunction.

### 7. *Conclusion.*

In sum, the Court finds that Annexes B & E as well as parts of H are statements or interpretations of general rules which must be published in the Federal Register. Yet, because defendants have fulfilled their statutory obligations for Annexes B & E, their motion for summary judgment is granted. Defendants' failure to do the same for Annex H supports an award of preliminary injunctive relief to the plaintiffs. Defendants have also plainly fulfilled their publishing obligations for Annexes C1, D & F and thus, an award of summary judgment is appropriate.

### B. *Indexing*

■ Plaintiffs' motion for a preliminary injunction also seeks to compel the defendants to issue an index of Annexes A through H. Plaintiffs contend that this index is required by section 552(a)(2)'s requirement that "each agency shall also maintain . . . current indexes . . as to any matter . . . required by *this paragraph* to be published." 5 U.S.C. § 552(a)(2) (1976) (emphasis added). Plaintiffs interpret the word "this paragraph" to include subsections (1) and (2) of section 552(a). Defendants, however, read this term as referring only to subsection (2). Because some of the material involved appears to fall within subsection (1), they are opposed to its indexing.

The Court finds that defendants' interpretation of the statute is essentially correct and as a result, it grants their motion to dismiss with respect to the subsection (1) material. "The starting point in every case involving the construction of a statute is the language itself." *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979). The words "this paragraph," by their plain meaning, refer to a specific paragraph; an examination of the statute shows that subsections (1) and (2) are separate paragraphs. Thus, the designation can only refer to subsection (2), the paragraph in which it is

found. Moreover, the Senate Report on the 1974 amendment to the Freedom of Information Act, instructs:

> The index provides identifying information for the public regarding matters issued, adopted, or promulgated by the agency and required to be made public by section 552(a)(2) of the Freedom of Information Act.

S.Rep.No.854, 93d Cong., 2d Sess. 8 (1974). The House Conference Report, which contains the first appearance of the language at issue, explains, "the conference substitute follows the Senate amendments . . ." H.R.Rep.No.1380, 93d Cong., 2d Sess. 6 (1974). Thus, the new wording did not alter the substance of the law. An examination of the legislative history of the Act reveals numerous references to the indexing requirement and all of them are clear in their language limiting its scope to subsection (a)(2). Indeed, the Court has not found one shred of evidence in the legislative record that the statute was intended to possess the sweep which plaintiffs propose. Because the indexing requirement does not apply to subsection (a)(1) rules of general applicability, the Court must grant defendants' motion to dismiss as to all annexes which appear to fall within this subsection. These annexes are labeled: A, B, C2, E, G & H.

The remaining annexes, marked C1, D & F, do not appear to fall within the scope of subsection (a)(2), in terms of their relationship to the review boards. Accordingly, the Court shall deny plaintiffs' claim for a preliminary injunction requiring the preparation of indexes for this material. Yet, because the precise status of these annexes is uncertain, defendants' motion for summary judgment is also denied.

### C. *Mailing of Actual Notice*

Finally, plaintiffs submit that the defendants should be required to provide DRB applicants with actual notice of the material contained in annexes A through H. Actual notice by mail is not required under the Freedom of Information Act and the Court concludes that there is no basis for the implication of this new remedy. Accordingly, it grants defendants' motion to dismiss.

### D. *Conclusion*

In sum, although the Court finds that plaintiffs have satisfied the criteria for a preliminary injunction with respect to the publication of annex H, their claim is deficient in all other respects.

### IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I, NACV'S CLAIM UNDER 38 U.S.C. § 3103(e)(1).

Count I of NACV's complaint seeks enforcement of the alleged statutory mandate of 38 U.S.C. § 3103(e)(1). This statute states:

(e)(1) Notwithstanding any other provision of law, (A) no benefits under laws administered by the Veterans' Administration shall be provided, as a result of a change in or new issuance of a discharge under section 1553 of title 10, except upon a case-by-case review by the board of review concerned, subject to review by the secretary concerned, under such section, of all the evidence and factors in each case under *published uniform standards (which shall be historically consistent with criteria for determining honorable service and shall not include any criterion for automatically granting or denying such change or issuance) and procedures generally applicable* to all persons administratively discharged or released from active military, naval, or air service under other than honorable conditions; and (B) any such person shall be afforded an opportunity to apply for such review under such section 1553 for a period of time terminating not less than one year after the date on which such uniform standards and procedures are promulgated and published.

Act of October 8, 1977, Pub.L. No. 95–126, § 1(a)(2), 91 Stat. 1106 (codified at 38 U.S.C. § 3103(e)(1)) (emphasis added). In essence, NACV's complaint asserts that the rules employed by the DRBs are not sufficiently uniform to comply with the mandate of section 3103(e)(1). NACV notes that, among those discharged by reason of unfitness, the percentages of servicemembers receiving Honorable, General or Undesirable Discharges vary widely from service to service, and even from year to year within each branch of the Armed Forces. For example, in 1976, 55% of those in the Army who were discharged for unfitness received Honorable Discharges; the corresponding percentage in the Marines and Navy was 5%. Four years earlier, the Navy figure had been 36%. First Amended Complaint ¶ 28 (filed March 5, 1979). NACV asserts that section 3103's "uniformity" requirement is intended to end these disparities, and that if truly uniform rules were issued for the upgrading of discharges, inconsistencies between the services would, in fact, be eliminated. The continuing existence of discrepancies, NACV concludes, is proof of defendants failure to comply with the law. Because the Court is persuaded that defendants have fulfilled the intended mandate of section 3103(e)(1), it grants defendants' motion for summary judgment.

The primary purpose of section 3103(e) of title 38, United States Code, is to prevent the award of veterans benefits to individuals who automatically received upgraded discharges under the clemency programs initiated by Presidents Ford and Carter. *See* S.Rep.No.305, 95th Cong., 1st Sess. (1977); H.R.Rep.No.580, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1977, p. 2844. The statute reflects congressional concern with the inequity of awarding veterans benefits in a manner which would not be historically consistent. The legislature feared that some individuals who had engaged in undesirable conduct would become eligible for benefits, while others who had committed the same transgressions but served during an earlier era, would remain ineligible. As a result, the statute requires the application of "historically consistent" criteria. The "uniformity" requirement which forms the basis of NACV's complaint was added to the proposed law, S.1307, 95th Cong., 1st Sess. (1977) at a later stage in the legislative process, after the bill had been reported out of committee. *See* Amendment No. 765, *reprinted in* 123 Cong.Rec. S14336 (Sept. 8, 1977). The legislative record accompanying

this new provision clearly indicates that the "uniformity" referred to something more than mere historical consistency. Senator Cranston, the apparent author of the measure, explained that the amendment would establish a "new discharge review program" founded on four principles. While one of these principles was the notion of historical consistency, a separate principle was the need for uniformity. The Senator declared:

Third, the program's standards and procedures must be "uniform". For several years, the discharge-review process has been criticized for the great disparities in the results among the services. I believe that the requirement of "uniform standards" will be very beneficial in this regard. The guidelines for discharge-review determination have, in the past, been set forth in internal memorandums and have not been codified and published. Thus, in the case of the Army Discharge Review Board, for example, such guidelines have, at least in part, been set forth in an unpublished document from the Board's president entitled "President's Standard Operating Procedure". In fact, the only published codification of discharge-review standards appears to have been the April 26, 1977, publication in the Federal Register of special discharge review program standards.

123 Cong.Rec. S14338 (Sept. 8, 1977).

The question raised by the instant motion is whether material facts remain in dispute regarding the uniformity of defendants' regulations. The Court holds that defendants' regulations, which appear at 32 C.F.R. pt. 70 (1978), fulfill the congressional mandate. Section 70.6 of title 32, Code of Federal Regulations, establishes upgrading criteria for all DRBs and the Court finds these criteria adequate. Plaintiff's contention that the defendants must issue standards which are so uniform as to remove all disparities in results is without merit. Although Congress was certainly concerned with the possibility of injustice resulting from the uneven application of upgrading criteria, the legislative record simply does not reflect the sweeping intent which NACV proposes. The "uniformity" mandated by Congress consisted of uniform rules, not uniform results. Differences in the availability of certain discharges for members of the Army, Navy or Air Force reflect, to some extent, the varying missions and disciplinary needs of each branch of the armed forces. While the legislative record clearly calls for uniform standards, it does not state that these historical differences are to be eliminated entirely. The Court is reluctant to order such sweeping reforms in the face of an ambiguous statute and complete legislative silence. Accordingly, it rejects NACV's contention that disparities in results may form the basis of a claim under 38 U.S.C. § 3103(e)(1).

## V. THE COURT GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE COUNTS INVOLVING PLAINTIFFS' RULE-MAKING PETITIONS.

In counts V through XVII of their complaint, plaintiffs assert that the defendants violated the Administrative Procedure Act, 5 U.S.C. § 706(2), by failing to promulgate certain rules which the plaintiffs have presented in rule-making petitions. Plaintiffs contend that, as a matter of law, the defendants are required to adopt and publish these rules and they seek an injunction compelling their adoption. The Court is persuaded that defendants are entitled to summary judgment on counts V through XVII.

In *Natural Resources Defense Council, Inc. v. SEC,* 196 U.S.App.D.C. 124, 606 F.2d 1031 (D.C.Cir.1979) the court of appeals for this circuit reviewed a complaint similar to the one presented here. The plaintiffs in *NRDC v. SEC* sought to compel the defendant agency to adopt rules which were not statutorily mandated. The court noted, "The interests of plaintiffs in this context will . . . rarely present unusual or compelling circumstances calling for judicial review." *Id.* at 138, 606 F.2d at 1045. Concerned with the possible deleterious effects of reviewing such complaints, the court explained that requiring an agency to defend its decision not to

adopt certain rules could "divert scarce institutional resources into an area that the agency in its expert judgment has already determined is not even worth the effort already expended." *Id.* at 138, 606 F.2d at 1045. The court concluded, however, that such agency decisions were subject to review. It provided the following rule:

> The stringency of our review, in a given case, depends upon an analysis of a number of factors, including the intent of Congress, as expressed in the relevant statutes, particularly the agency's enabling statute; the needs, expertise, and impartiality of the agency as regards the issue presented; and the ability of the court effectively to evaluate the questions posed.

*Id.* at 143, 606 F.2d at 1050. In this case, the calculus of these interests supports an award of summary judgment to the defendants.

First, the Court has already ruled that the regulations issued at 32 C.F.R. pt. 70 satisfy the "uniformity" requirement of 38 U.S.C. § 3103(e)(1). To the extent that plaintiffs' rule-making claim is based directly on this statute, it is plainly precluded by the Court's holding. In addition, inherent in the Court's holding that the mandate of the statute had been met is the concept that the statute provides the defendants with a certain degree of discretion in promulgating rules pursuant to section 3103(e)(1). In other words, the statute does not require that specific rules be enacted; it only demands that the rules, which are enacted, be published, uniform, generally applicable and historically consistent with criteria for determining the award of veteran's benefits. At the heart of plaintiffs' rule-making claim is the assertion that the defendants are bound to promulgate *every* rule which they follow, regardless of its obviousness or its appearance elsewhere in statutory or case-law form. The logical end of this assertion would be a codification of every conceivable aspect of DRB operation. Thus, for example, count XVII of plaintiffs' complaint calls for the promulgation of a rule specifying the time in which DRB proceedings shall be completed. This rule is purportedly required by section 555(b) of title 5, United States Code, which provides that an agency shall conclude matters "within a reasonable time." The statute, however, provides its own mandate and thus, it need not be codified in the form of a DRB rule; the language of section 3103(e)(1) that the defendants operate under "published" rules cannot be construed to require the precise codification which plaintiffs appear to urge. *See Center for Auto Safety v. Bowers*, 466 F.Supp. 829 (D.D.C.1979).

Significantly, plaintiffs, in this complaint, do not raise the issue of defendants' actual compliance with the alleged requirements of the various proposed rules. They only complain that the defendants' obligation to comply has not been codified and published in the Federal Register. In reviewing the limited nature of plaintiffs' complaint, the Court finds that section 3103(e)(1) does not require the defendants to codify every obligation imposed by statute. If the obligation is clearly imposed by law or statute, it could well be an otiose gesture for the defendants to promulgate and publish a rule which does no more than parrot pre-existing requirements. Thus, under the first of the criteria proposed in *NRDC v. SEC*, *supra*, the Court holds that the relevant enabling statute delegated to the defendants significant discretion in their selection of substantive rules for DRB review.

Because the essence of plaintiffs' claim is that the defendants are *obligated* to promulgate the proposed rules, the Court is not directly called upon to determine whether defendants have behaved arbitrarily or capriciously. However, plaintiffs rely broadly on 5 U.S.C. § 706(2) and, therefore, some determination of the quality of defendants' behavior is appropriate, and perhaps necessary, for an award of summary judgment. A brief review of the remaining criteria suggested by *NRDC v. SEC, supra*, indicates that plaintiffs have failed to place in dispute material facts regarding the arbitrariness or capriciousness of the defendants' conduct. The needs of the defendants in the review process and their expertise in

this area both call for deferential review of their conduct. Moreover, the Court's limited ability to evaluate the propriety of the rules proposed by plaintiffs provides further support for deference to defendants' expertise. Taking these factors into account, the Court is presented with no allegation to support a finding that the defendants acted in contravention of 5 U.S.C. § 706(2).

The facts rendered material by this Court's interpretation of the relevant statutes are not in dispute. Moreover, it is clear that defendants' behavior has been neither arbitrary nor capricious. Accordingly, defendants shall be awarded summary judgment with respect to counts V through XVII.

## VI. CONCLUSION.

The Court grants in part plaintiffs' motion for class certification and it grants plaintiffs' motion for a preliminary injunction regarding the publication of Annex H. It grants defendants' motion for summary judgment with respect to the publication of Annexes B, C1, D, E & F, count I (NACV's claim under 38 U.S.C. § 3103(e)(1)) and counts V through XVII (plaintiffs' rulemaking petitions). It grants their motion for dismissal regarding the indexing of Annexes A, B, C2, E, G & H and the mailing of all Annexes. Thus, the sole remaining issues in the case are final injunctive relief concerning the publication of Annex H and the indexing of Annexes C1, D & F.

An order in accordance with the foregoing will be issued of even date herewith.