DILLER ACTIVE, INC., et al., Plaintiffs,

v.

Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Defendant.

Civ. A. No. 82–1505.

United States District Court, District of Columbia.

Jan. 19, 1983.

William A. Bradford, Jr., Earl M. Collier, Jr., Washington, D.C., for plaintiffs.

Patricia J. Kenney, Asst. U.S. Atty., Jeffrey Gibbs, Sp. Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This case, which is before the court on cross-motions for summary judgment, involves the denial by the Secretary of Health and Human Services of Medicare reimbursement to the Los Angeles New Hospital ("LANH") for expenses allegedly incurred in providing medical care. LANH's claim for reimbursement was first denied by Blue Cross of Southern California, the financial intermediary through which LANH was paid for the reasonable cost of services rendered under the Medicare program. That denial was upheld after a hearing by the Provider Reimbursement Review Board ("PRRB"), which reviews claims by providers dissatisfied with their intermediary's disposition of a claim. The PRRB's action was in turn upheld by the Deputy Administrator of the Health Care Financing Administration ("HCFA"), acting as the agent of the Secretary. Extensive evidentiary hearings, briefing and appeals produced an administrative record of more than 1,600 pages. Plaintiffs now appeal the final denial of their claim to this Court.

Review of the Secretary's decision must be conducted under Administrative Procedure Act standards, and the Secretary's decision must be upheld if supported by substantial evidence and not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2).

 Under the Medicare program, the Secretary is charged with reimbursing health care providers for the "reasonable cost" of services provided. Reasonable cost is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). The statute grants the Secretary broad authority to promulgate rules and regulations for determining reasonable costs. Deference must be given to the Secretary's expertise and authority in this area, and the agency's development and application of regulations interpreting the statute must be upheld if reasonably consistent with the law. *Richey Manor, Inc. v. Schweiker,* 684 F.2d 130, 134 (D.C.Cir.1982); *American Medical International, Inc. v. Secretary of Health, Education and Welfare,* 466 F.Supp. 605, 610–11 (D.D.C.1979), *affirmed,* 677 F.2d 118 (D.C. Cir.1981). After reviewing the administrative record on file the Court finds the Secretary's denial of reimbursement to be reasonable and consistent with the law, and summary judgment must be granted the defendant and denied the plaintiffs.

LANH is a proprietary limited partnership, and its sole general partner is a California corporation Diller Active, Inc. Diller Active, Inc., is in turn owned by Stanley Diller, the individual primarily responsible for the acquisition, organization, and management of LANH.

 The first reimbursement claim at issue is plaintiffs' claim based on $450,000 in fees allegedly due to Diller Active, Inc. for organizational services performed in the four and one-half years prior to LANH's opening in 1975. LANH did not report these fees until its 1978 Medicare cost report. Neither did it record the alleged fee obligation in its financial books and records during the years the services were supposedly being performed. Regulations promulgated by the Secretary pursuant to 42 U.S.C. § 1395x(v)(1)(A) require that providers such as LANH seeking reimbursement must provide accurate cost data based on the accrual basis of accounting, under which expenses are reported in the period in which they are incurred regardless of when

they are to be paid. 42 C.F.R. § 405.453. The reasonableness of that regulation, which prohibits after-the-fact claims for reimbursement that are not supported by contemporaneous business records and are potentially unverifiable, is patent. *See Doctors Hospital, Inc. v. Califano,* 459 F.Supp. 201, 206 (D.D.C.1978). Plaintiffs' claim, made years after the alleged expenses were incurred, clearly does not comply with the requirements of the regulation and the Secretary was fully justified in denying it.

The next expense at issue involves management fees of $317,481, $404,000 and $457,000 that are claimed on LANH's 1976, 1977, and 1978 Medicare cost reports. These fees were allegedly paid to Diller Active, Inc. to cover the management services performed by its sole employee, Stanley Diller. Plaintiffs admit that the applicable regulation under which reimbursement for Mr. Diller's services should be determined is 42 C.F.R. § 405.426, which governs the basis for compensating an owner of a health care provider for necessary services actually performed by the owner. Under that regulation the standard setting reasonable compensation is the amount that would ordinarily be paid for comparable services by comparable institutions. Fiscal intermediaries such as Blue Cross of Southern California are given primary responsibility for evaluating the reasonableness of owner's compensation under that standard as more fully set out in the Provider Reimbursement Manual (HIM–15). The Manual directs intermediaries to first undertake surveys in order to establish the range of compensation paid to managers and administrators in comparable institutions, and cites some of the criteria to be considered when deciding if institutions are "comparable." It then sets forth the further factors to be considered in determining where, within a certain range, the value of any particular owner's services should be set.

In determining the reasonable compensation due Stanley Diller, Blue Cross relied on a 1974 survey of California health care providers collecting data on the salaries paid to different types of administrators as well as information on hospital size, range and type of services provided, and geographical location. That information was used to develop a range of salaries paid to administrators in hospitals of a comparable size and type. Blue Cross then used a "point system" to determine where, within the relevant range of salaries, Stanley Diller's services would be valued. Points were assigned for Mr. Diller's services based on information LANH provided about Mr. Diller's educational background and health care experience, the number and type of personnel he supervised, and the duties and responsibilities associated with his position.

Using that system, Blue Cross determined that reasonable compensation for Stanley Diller's services would be $42,897, $46,064 and $49,462 in the 1976, 1977, and 1978 cost-reporting years, respectively. That determination, which was upheld by the PRRB and the Secretary, is now challenged by plaintiffs on four grounds.

▇ First, plaintiffs argue that the Secretary's reliance on the guidelines was unreasonable because the guidelines themselves are based on survey information that is not statistically accurate or acceptable. In particular, plaintiffs point out that not all the providers in LANH's region responded to the survey; the highest salaries reported were excised from consideration in formulating the guidelines; the survey did not collect information as to social security, unemployment taxes, worker's compensation and pension benefits paid to administrators; it lumped together information from both proprietary and nonproprietary institutions; and the 1974 survey data was not updated before being applied to plaintiffs' 1976, 1977 and 1978 cost-reporting years.

The Secretary's methodology, if imperfect, is nevertheless sound enough to meet the standard of review applicable. Approximately 80 percent of the providers of LANH's size did respond to the survey; the very lowest salaries reported, as well as the very highest, were excised from consideration; the survey did request information on insurance, vacation, and bonus benefits;

and the salary ranges were adjusted on an annual basis for inflation. Plaintiffs have failed to show that the survey information was so defective as to render the guidelines arbitrary, unreasonable, or capricious.

■ Second, plaintiffs claim that Blue Cross' valuation of Stanley Diller's services was unreasonable because the salary range guidelines place an upper limit on the compensation that is considered "reasonable" for an owner-administrator. Plaintiffs urge it was arbitrary and unreasonable to value Stanley Diller's services within the confines of such a range because it failed to take account of the fact that his services were of such "extraordinary depth and scope" that it was "impossible" to compare them with the services provided by administrators and managers in other hospitals.

Plaintiffs' argument is not well taken. In the case of institutions of LANH's size and character, Blue Cross determined that the appropriate salary range for administrators in 1974 was from $27,000 to $42,400. For even larger hospitals, the upper end of the scale was still only $55,000. Plaintiffs seek fees nearly ten times greater under a management contract which awards Mr. Diller two percent of the gross revenues of the hospital. That claim is clearly in excess of the cost of similar services at comparable institutions and indeed appears unreasonably excessive on its face. *United States v. Fairlane Memorial Convalescent Homes, Inc.,* 501 F.Supp. 863, 871 (E.D.Mich.1980), *affirmed,* 667 F.2d 1028 (6th Cir.1981). Faced with such an exorbitant claim, the Secretary's decision to stay within the range of salaries found in existing guidelines was clearly reasonable.

The Secretary cannot make special allowances for every owner such as Mr. Diller who claims unique value to his services but must rely on broader categorizations in determining what compensation is reasonable. Such line-drawing is a necessity in a program as complex and ripe for potential abuse as Medicare, and especially in circumstances such as these where salary arrangements are not made at arms' length. The guidelines at issue reasonably advance the purposes of the statute and are valid. *Weinberger v. Salfi,* 422 U.S. 749, 776–777, 95 S.Ct. 2457, 2472–73, 45 L.Ed.2d 522 (1975); *Shaker Medical Center Hospital v. Secretary of Health and Human Services,* 686 F.2d 1203, 1209 (6th Cir.1982).

■ Third, plaintiffs argue that Blue Cross' determination is invalid because the point system used to place Mr. Diller's compensation within the applicable range is irrational. Although plaintiffs' argument is far from clear, it appears to focus on the fact that the point system, which is used to take account of the personal qualities of an administrator in terms of experience, education, and responsibilities, is not based on survey data such as that used to formulate the salary range guidelines. Because the point system was created without such survey data, plaintiffs argue, there is no reason to assume that it reflects the compensation actually paid to administrators by providers.

The Secretary is granted broad authority under the Social Security Act to devise methods for determining when costs are "reasonable." 42 U.S.C. § 1395x(v)(1)(A). Once survey data is used to determine the range of salaries actually paid by comparable institutions, it is within the Secretary's discretion to apply those ranges in accord with its expertise without acquiring further, more detailed data. The point system methodology applied to plaintiffs' claim is rational and must be upheld.

Finally, plaintiffs argue that the guidelines relied on by the Secretary are invalid because they were never published in the *Federal Register* in accord with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(1)(D). That provision applies to "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency."[1]

---

1. Plaintiffs alleged in their complaint that publication was required by the "Administrative

Procedure Act, 5 U.S.C. § 501 [551] *et seq.*" Complaint, filed June 1, 1982, at 6. In plain-

■ The Court finds that the plaintiffs have failed to show that the guidelines set out in the Provider Reimbursement Manual are rules or statements of policy which must be published under 5 U.S.C. § 552(a)(1)(D). There is no evidence that the guidelines impose mandatory obligations upon either providers or intermediaries as to owner's compensation or that they effect pre-existing legal rights or obligations. *Appalachian Power Co. v. Train,* 566 F.2d 451, 455 (4th Cir.1977). The guidelines serve as aids to intermediaries in determining reasonable owner's compensation, and there is no indication that intermediaries do not retain discretion to take account of unusual or compelling circumstances in their application. Nor is there evidence that the PRRB or the Secretary may not adjust the compensation set by the intermediary when there is a reason to do so, or that providers are prevented from presenting further information supporting a valuation of compensation different from that suggested by the guidelines. The Manual appears only to explain how "comparable" services and institutions may be determined under existing regulations and has no significant impact upon the general public or a segment thereof. *National Association of Concerned Veterans v. Secretary of Defense,* 487 F.Supp. 192, 200 (D.D.C.1979); *Lewis v. Weinberger,* 415 F.Supp. 652, 659 (D.N.M.1976). *See Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

The third and last claimed expense at issue involves the LANH's Cardiac Observation Unit ("COU"). For the 1976, 1977 and 1978 cost-reporting years, the LANH claimed a special high rate of reimbursement for its COU on the grounds the unit qualified as a "special care unit" under applicable regulations. Special reimbursement was denied on the grounds that the COU in fact more closely resembled a routine care area. For the cost-reporting years at issue, the regulations defined a special care unit as follows:

"*Intensive care units, coronary care units, and special care inpatient hospital units.* To be considered an intensive care unit, coronary care unit, or other special care inpatient hospital unit, the unit must be in a hospital, must be one in which the care required is extraordinary and on a concentrated and continuous basis and must be physically identifiable as separate from general patient care areas. There shall be specific written policies for each of such designated units which include, but are not limited to, burn, coronary care, pulmonary care, trauma, and intensive care units but exclude postoperative recovery rooms, postanesthesia recovery rooms, or maternity labor rooms. 42 C.F.R. § 405.452(d)(10) (1980).

■ The parties are agreed that as to LANH's COU the only requirement of the regulation at issue is whether the COU provided care that was "extraordinary and on a concentrated and continuous basis." The law is settled that the Secretary may determine whether a certain level of care meets that requirement by comparing it with the care provided in the sorts of special care areas enumerated in the regulation, that is, intensive care units, coronary care units, and so on. *Psychiatric Institute of Washington, D.C., Inc. v. Schweiker,* 669 F.2d 812, 814 (D.C.Cir.1981); *White Memorial Medical Center v. Schweiker,* 640 F.2d 1126, 1128–29 (9th Cir.1981).

The Secretary's classification of LANH's COU as a routine rather than a special care area was based on several factors. In particular, the level of care provided there was substantially less than that provided in LANH's own Intensive Care Unit and Coronary Care Unit, there was no direct visual observation of patients in the COU, and the COU was not licensed as an intensive care unit by the State of California.

Plaintiffs argue that the Secretary's decision is arbitrary, capricious, and not supported by substantial evidence because the Secretary relied primarily on comparisons between the COU and LANH's own inten-

tiffs' motion for summary judgment filed October 8, 1982, at 26, plaintiffs clarified their posi-

tion indicating that publication is required by 5 U.S.C. § 552(a)(1)(D) in particular.

sive care units, rather than comparing the level of care provided in the COU with the level of care provided in intensive care units in other hospitals.

 While the level of care provided in LANH's own intensive care units is not a failproof measure of the care typically provided in intensive care units, it does provide some evidence as to general standards. Moreover, the fact that the COU was unlicensed also suggests that the COU's level of care was below that generally found in intensive care units. The Secretary may properly compare the COU with LANH's own intensive care units, and the intensive care standards set by the State of California, in determining whether the COU qualified as a special care unit under the regulations. This Court cannot say that the Secretary's decision was arbitrary or unsupported by substantial evidence, and it must be upheld.

An appropriate Order is filed herewith.

## ORDER

For the reasons set forth in the Court's Memorandum filed herewith, it is hereby

ORDERED that plaintiffs' motion for summary judgment is denied, defendant's motion for summary judgment is granted and the complaint is dismissed.