**Jimmie Lee BLACKWELL**

v.

**John O. MARSH, Jr., Secretary of the Army.**

**No. C82–178A.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 8, 1982.

Kenneth G. Levin, Martin L. Ellin, Atlanta Legal Aid, Atlanta, Ga., for plaintiff.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for defendant.

## ORDER OF COURT

MOYE, Chief Judge.

In this action plaintiff seeks judicial review of an adverse decision of the defendant, acting through the Army Board of Correction of Military Records (BCMR), on an application by plaintiff to change the character of his military discharge from Dishonorable to General.

On June 4, 1957, plaintiff appeared before a General Court Martial at which time he pled guilty and was subsequently convicted of aggravated assault on another soldier during the early morning hours of May 5, 1957. Thereafter, plaintiff received a sentence of ten months confinement, forfeiture of all time and pay, and a dishonorable discharge retroactive to April 3, 1957.

On July 3, 1957, the finding and sentence were affirmed by the Board of Review.

On January 15, 1980, the BCMR received from plaintiff an application for correction of military or naval record. On October 1, 1980, plaintiff's application was denied by the BCMR. On May 18, 1981, the Evaluation and Inquiries Branch of the Office of the Surgeon General (OTSG), affirmed its opinion of September 8, 1980, that no upgrade of plaintiff's discharge on medical purposes was warranted. On August 6, 1981, the BCMR again denied plaintiff's request for a hearing on the application and reaffirmed its determination that plaintiff's military service is appropriately characterized by a dishonorable discharge. Thereafter, on January 28, 1982, plaintiff filed the instant action.

Motions presently pending are (1) defendant's motion to dismiss or in the alternative for summary judgment and (2) plaintiff's motion for summary judgment. Defendant's motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) must be DENIED, inasmuch as the complaint does sufficiently state a claim upon which relief may be granted. As plaintiff points out in his brief in opposition to defendant's motion, the complaint makes precisely the allegation that defendant admits would, if proven, constitute the only legal basis upon which the Court could grant the relief that plaintiff seeks. Paragraph 11 of the complaint alleges that defendant's decision was unsupported by substantial evidence, was arbitrary and capricious, and was contrary to law. Remaining are cross motions for summary judgment pursuant to Fed.R.Civ.P. 56.

One who serves in any of the branches of the United States armed forces is to be issued one of five possible kinds of discharges at the termination (scheduled or unscheduled) of his period of service. It is mandatory "that the type of discharge ... reflect accurately the nature of service rendered." *Harmon v. Brucker,* 355 U.S. 579, 583, 78 S.Ct. 433, 436, 2 L.Ed.2d 503 (1958). Ranging downwards from the discharge reflecting the most satisfactory character of service to that reflecting the least satis-

factory, those discharges are: (1) Honorable, (2) General (or Under Honorable Conditions), (3) Other than Honorable (formerly known as Undesirable), (4) Bad Conduct, and (5) Dishonorable. See Lunding, "Judicial Review of Military Administrative Discharges," 83 Yale L.J. 33 (1973).

The first three kinds of discharges are known collectively as "administrative discharges," because the law permits them to be issued without a trial by court-martial. The latter two kinds of discharges are referred to as "punitive discharges," and may only be issued after sentence imposed is by a general court-martial. See Stichman, "Developments in the Military Discharge Review Process," 4 Military Law Reporter 6001, footnote 1 (1976).

Since the end of World War II, two different sets of administrative boards have existed within each military service that have the power, *inter alia*, to recharacterize an individual's military discharge from a less favorable category to a more favorable one. One group of such bodies is the Discharge Review Boards (DRB's), and these are made up of military officers. Their authority is generally set forth at 10 U.S.C. § 1553. The other group is the Boards for the Correction of Military Records (BCMR's), which are made up of civilian employees of the respective military departments who have had past military service. Their authority is generally set forth at 10 U.S.C. § 1552.

Defendant contends in his motion for summary judgment there was substantial evidence supporting a declination to upgrade plaintiff's discharge. Defendant quotes the opinion of the BCMR following reconsideration that "there is and was insufficient basis for issuance of a discharge based on unsuitability ... That the applicant repeatedly stabbed another soldier in the chest with a knife and therefore it appears that his military service is appropriately characterized by a dishonorable discharge."

Defendant argues that while an alternative finding might be possible based on selective evidence, plaintiff has failed to show that the BCMR's decision was not based on substantial evidence.

Plaintiff has opposed defendant's motion and has filed his own motion for summary judgment.

Plaintiff's main contention in this action, as well as in his BCMR reviews, is that at the time of plaintiff's dishonorable discharge plaintiff was suffering from a preschizophrenic personality disorder. In support of this contention, plaintiff relies on a letter prepared for plaintiff's counsel by Dr. Edward Leader. This letter, dated July 17, 1980, reads as follows:

Dear Mr. Levin:

I have reviewed the records concerning Mr. Jimmy Lee Blackwell. He presents us with very important psychiatric, legal and social problems. The issue stems from the fact that in 1957, while serving in the U.S. Army, he was involved in a barracks fight in which he stabbed another soldier. He was convicted by a court martial and ultimately dishonorably discharged. Eight years later in 1965 he was first diagnosed as being psychotic and suffering from schizophrenia. Since that time he has been repeatedly hospitalized in psychiatric institutions with the diagnosis of schizophrenia. This poses the question as to whether Mr. Blackwell was suffering from undiagnosed schizophrenia at the time of the crime in 1957 and whether or not his mental status influenced his violent behavior at that time.

Experts in the study of schizophrenia believe that this severe form of mental illness generally begins insidiously and is present in some form or other at least as early as adolescence. This does not mean that it could be easily diagnosed as schizophrenia in the prepsychotic stages of the disease. In the leading American textbook on schizophrenia, *Interpretation of Schizophrenia* (1974), by Silvano Arieti, M.D., the author states that before the obvious symptoms of schizophrenia appear, that is a flattened affect, disordered cognitive associations, delusions, hallucinations, etc., the person usu-

ally exhibits one of two prepsychotic personality types. These are the schizoid personality, a particularly quiet, withdrawn type of personality, and, secondly, the stormy personality, an impulsive, chaotic and sometimes violent type of personality. These personality types often demonstrate irrational thinking and poor impulse control. A stressful situation such as a drunken argument might cause a person with a preschizophrenic personality disorder to react with violence more readily than a person with a less disturbed personality. One, therefore, can *presume* that if Mr. Blackwell did not have a preschizophrenic personality disorder, he would have been much less likely to have stabbed someone after having been struck in the face. In fact there is some evidence that Mr. Blackwell had characteristics of each type of preschizophrenic personality during his adolescence and early adulthood. At that time only a very sensitive psychiatric examination, probably including specialized psychological testing, could have picked up the evolving schizophrenic pattern.

In conclusion, Doctor Leader stated:

I, of course, do not wish to address the legal issue of responsibility for a crime. I do, however, have a definite *opinion* with regard to whether Mr. Blackwell was suffering from a psychiatric illness in 1957, the time of the offense. Since he has been repeatedly diagnosed as being chronically schizophrenic at least since 1965, I have no doubt that in 1957 he at the very least was suffering from a preschizophrenic personality disorder. This must have played a role in all aspects of his behavior and had to be involved in some way with the crime that he committed while in the army. (Emphasis in original).

Plaintiff contends that based on Doctor Leader's letter, together with other factors (such as plaintiff's age, the circumstances surrounding the incident, and the fact the nation was not at war), plaintiff's discharge should have been for unsuitability rather than for unfitness. Plaintiff points out that one separated for unsuitability must be given either an Honorable or a General Discharge, "as warranted by his military record." Army Regulation No. 635–212.

Plaintiff also brings to the Court's attention a number of other discharge upgrading decisions. Plaintiff contends that defendant must either follow or distinguish previous decisions, that decisions of BCMR's have precedential value, that DRB decisions have precedential value to BCMR's, and that decisions of other services also have precedential value. Plaintiff cites *McHenry v. Bond*, 668 F.2d 1185 (11th Cir.1982), in support of his proposition that agencies must either follow or rationally distinguish their earlier cases.

■ Defendant responds to this by pointing out that only two of the sixteen cases submitted by plaintiff in which an applicant's discharge was upgraded, involved individuals who had been dishonorably discharged. Defendant further points out that one of these cases consisted of disrespect to an officer and failure to obey a command, while the other one was for sleeping on duty. The Court must agree with defendant that there is no duty to distinguish cases that are not shown to be similar enough to the case at bar that inconsistent results are likely. The Court finds that none of the cases relied upon by plaintiff meets this standard.

■ Plaintiff next contends that the BCMR's decision is inadequately explained. Plaintiff argues that in the instant case, defendant's decision is far from adequate to permit the Court or the plaintiff to know why the case was disposed of as it was. Plaintiff contends that defendant's decision violates the Administrative Procedure Act (APA) in that the BCMR did not adequately explain the basis for its decision so that a court can intelligently review it.

Defendant responds that the decision of the BCMR was adequately explained. Defendant notes that plaintiff's evidence and contentions were considered by the BCMR at the original review of plaintiff's applica-

tion to upgrade his discharge. At the reconsideration review, the BCMR again analyzed plaintiff's side of the case in detail, noted the OTSG's opinion and plaintiff's rebuttal. Defendant suggests that plaintiff simply does not like the result of the BCMR's giving more weight to the Surgeon General's opinion than to Doctor Leader's opinion.

A review of the findings of the BCMR does not support plaintiff's claim that they were inadequately explained. As is almost always the case, the decision-making body could have further dissected its findings.

In this instance, the Court finds that the BCMR's decisions were adequately explained. The cornerstone of the BCMR's decision is the finding that the OTSG report prepared by Doctor Helsel outweighs the opinions expressed by Doctor Leader.

The Court now turns to plaintiff's main contention: that plaintiff's discharge should have been based on unsuitability rather than unfitness.

Plaintiff repeatedly has pointed out to the Court that an individual's discharge should reflect accurately the nature of the service rendered. *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958). The Court is not persuaded that Doctor Leader's letter necessarily compelled the BCMR to find that plaintiff should have been discharged for unsuitability rather than unfitness. The Court finds that there was substantial evidence to support the BCMR's decision. *Sanford v. United States*, 399 F.2d 693 (9th Cir.1968).

Accordingly, the Court hereby GRANTS defendant's motion for summary judgment.