**Ronald S. STRANG, et al.**

v.

**John O. MARSH, Jr., et al.**

**Civ. A. No. 83–0409 P.**

United States District Court,
D. Rhode Island.

Feb. 21, 1985.

---

Bruce Hodge, Gary Powers, of R.I. Legal Services, Providence, R.I., Barton F. Stichman, David F. Addestone, Nat. Veterans Legal Services Project, Inc., Washington, D.C., for plaintiffs.

Everett C. Sammartino, Asst. U.S. Atty. for R.I., Providence, R.I., for defendants; Major Craig P. Niederpruem, Thomas R. Folk, Dept. of Army, Washington, D.C., of counsel.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This is an action challenging the review procedures employed by Discharge Review Boards ("DRBs") and Boards for the Correction of Military Records ("BCMRs"), administrative bodies created by Congress to review and determine whether to recharacterize less than fully honorable discharges given to military personnel. In particular, plaintiffs seek declaratory and injunctive relief requiring the defendant boards expressly to follow, distinguish or overrule prior board decisions when an individual seeking upgrade cites a prior decision in his application. They argue that the Boards' asserted failure to respond adequately to citations of prior decisions violates the Boards' enabling statutes, 10 U.S.C. §§ 1552 and 1553; the Freedom of Information Act, 5 U.S.C. § 552; the Administrative Procedure Act, 5 U.S.C. §§ 555, 557(c) and 706; and the Due Process Clause of the Fifth Amendment to the Constitution. The matter is currently before the Court on cross-motions for summary judgment and defendants' motion in the alternative to dismiss the complaint for failure to state a claim upon which relief may be granted. Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1331.[1]

## I. BACKGROUND

### A. Parties

Plaintiffs in this action are seven individuals and two veterans' advocacy organizations. The seven individuals—former members of the Army and Navy [2]—were all discharged prior to the expiration of their term and given a less than fully honorable discharge. Each of the seven has unsuccessfully sought recharacterization of his discharge before a DRB and/or BCMR.[3] The organizational plaintiffs, Vietnam Era Veterans' Association ("VEVA") and Vietnam Veterans of American ("VVA") are non-profit groups who advance the interests of veterans and whose activities include representation of veterans before the discharge boards. Defendants are the Secretary of Defense and the Secretaries of the Army, Navy and Air

---

**1.** In addition to § 1331, the plaintiffs also allege jurisdiction under 28 U.S.C. § 1361 and 5 U.S.C. § 552. Amended Complaint, ¶ 1. Because the parties have not addressed the applicability of either provision, and because I have found jurisdiction proper under the federal question statute, I do not decide whether these separate bases of jurisdiction are properly invoked here.

**2.** Plaintiffs Strang, Schofield and Guindon are former members of the Army. Plaintiffs Chambers, Paluga, Tullos and Romann are former members of the Navy, the latter two having been Marines.

**3.** Of the seven individual plaintiffs, only Strang applied to a BCMR for relief. Although the Army BCMR granted him partial relief, it did not accord him the full reclassification he sought.

Force, respectively. These officials oversee the separation of military personnel from the armed forces and administer the BCMR's and DRB's, pursuant to 10 U.S.C. §§ 1552 and 1553.

None of the plaintiffs seeks, through this action, judicial review of his adverse Board decision. *Plaintiffs' Mem. In Supp. of Summ. Jmt.*, at 50. Rather, the plaintiffs challenge only the decisionmaking procedures employed by the Boards, and seek as relief: (1) a declaration that the Boards' failure to follow, distinguish or overrule prior decisions violates federal statutory and constitutional law; (2) an injunction prohibiting the defendants from pursuing this practice in the future; (3) an injunction ordering defendants to review past applications where Board decisions were cited and to prepare responses to those citations; and (4) an injunction ordering defendants to amend their regulations to include new procedures for responding to citations of past cases.

### B. The Discharge Review Process

Upon separation from the armed services, an individual may receive one of five discharge characterizations: honorable; general or under honorable conditions; undesirable; bad conduct; and dishonorable. The first three types are awarded administratively, when the individual is terminated from the service; the latter two may be awarded only after a court-martial convic-

tion. Unless an individual holds an honorable or general discharge, he may not receive veterans' benefits. *See generally National Association of Concerned Veterans v. Sec. of Defense*, 487 F.Supp. 192 (D.D.C.1979); Lunding, *Judicial Review of Military Administrative Discharges*, 83 Yale Law Journal 33 (1973).

Prior to World War II, the only way a veteran could seek recharacterization of a discharge was to secure congressional passage of private relief legislation. Seeking to relieve itself of this burden, Congress in 1944 mandated that each military service establish a Discharge Review Board. Section 301, Serviceman's Readjustment Act of 1944, P.L. 346, 58 Stat. 284 (1944), *codified at* 10 U.S.C. § 1553. In 1946, Congress additionally authorized the Secretary of each service to create a Board for the Correction of Military Records. Section 207, Legislative Reorganization Act of 1946, 80 Stat. 812, 837, amended by Act of Oct. 25, 1951, 65 Stat. 655, *codified at* 10 U.S.C. § 1552. *See generally* J. Glosser and K. Rosenberg, *Military Correction Boards: Administrative Process and Review by the United States Court of Claims*, 23 American U.L.Rev. 391 (1973).

The DRBs, each comprised of five military officers, are empowered to review any discharge, other than one issued by sentence of a general court-martial, and to reclassify a discharge, subject to review by the appropriate Secretary.[4] 10 U.S.C.

---

4. Section 1553 provides:

 § 1553. *Review of discharge or dismissal*
 (a) The Secretary concerned shall, after consulting the Administrator of Veterans' Affairs, establish a board of review, consisting of five members, to review the discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial) of any former member of an armed force under the jurisdiction of his department upon its own motion or upon the request of the former member or, if he is dead, his surviving spouse, next of kin, or legal representative. A motion or request for review must be made within 15 years after the date of the discharge or dismissal. With respect to a discharge or dismissal adjudged by a court-martial case tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)),

action under this subsection may extend only to a change in the discharge or dismissal or issuance of a new discharge for purposes of clemency.
 (b) A board established under this section may, subject to review by the Secretary concerned, change a discharge or dismissal, or issue a new discharge, to reflect its findings.
 (c) A review by a board established under this section shall be based on the records of the armed forces concerned and such other evidence as may be presented to the board. A witness may present evidence to the board in person or by affidavit. A person who requests a review under this section may appear before the board in person or by counsel or an accredited representative of an organization recognized by the Administrator of Veterans' Affairs under chapter 59 of title 38.

§ 1553(a)–(b). Any veteran seeking DRB review is entitled to a hearing. § 1553(c).

The BCMRs are comprised of civilian personnel and accorded greater power by Congress.[5] In addition to reclassifying discharges, a BCMR may actually change or correct the veteran's military records where "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). A BCMR need not grant a hearing, however, *Kalista v. Sec. of the Navy,* 560 F.Supp. 608, 616 (D.Col.1983), and while in limited circumstances it will review a case not yet heard by a DRB, it typically hears cases where a DRB has already denied full relief, *see* Lunding, *supra* at 41–42.

In 1977, Congress enacted legislation mandating that veterans' benefits be paid pursuant to a DRB-upgraded discharge only after a "case-by-case review" by the DRB under "published uniform standards." 38 U.S.C. § 3103(e)(1).[6] Thereafter, the

---

The regulations governing DRBs are codified at 32 C.F.R. § 70.3, *et seq.* (1984); 32 C.F.R. § 581.2, *et seq.* (1984) (Army DRB); 32 C.F.R. § 865.1, Subpart B, *et seq.* (1983) (Air Force DRB); 32 C.F.R. § 724, *et seq.* (1984) (Navy DRB).

5. In pertinent part, § 1552 provides:

§ 1552. *Correction of military records; claims incident thereto*

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of Transportation may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

(b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be....

(d) Applicable current appropriations are available to continue the pay, allowances, compensation, emoluments, and other pecuniary benefits of any person who was paid under subsection (c), and who, because of the correction of his military record, is entitled to those benefits, but for not longer than one year after the date when his record is correct-ed under this section if he is not reenlisted in, or appointed or reappointed to, the grade to which those payments relate. Without regard to qualifications for reenlistment, or appointment or reappointment, the Secretary concerned may reenlist a person in, or appoint or reappoint him to, the grade to which payments under this section relate.

(e) No payment may be made under this section for a benefit to which the claimant might later become entitled under the laws and regulations administered by the Administrator of Veterans' Affairs.

(f) With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to—

(1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or

(2) action on the sentence of a court-martial for purposes of clemency.

The regulations governing BCMRs are codified at 32 C.F.R. § 581.3, *et seq.* (1984) (Army BCMR); 32 C.F.R. § 865.1, Subpart A, *et seq.* (1983) (Air Force BCMR); and 32 C.F.R. § 723.-1, *et seq.* (Navy BCNR).

6. Section 3103(e)(1) provides:

Notwithstanding any other provision of law, (A) no benefits under laws administered by the Veterans' Administration shall be provided, as a result of a change in or new issuance of a discharge under section 1553 of title 10, except upon a case-by-case review by the board of review concerned, subject to review by the Secretary concerned, under such section, of all the evidence and factors in each case under published uniform standards (which shall be historically consistent with criteria for determining honorable service and shall not include any criterion for automatically granting or denying such change or issuance) and procedures generally applicable to all persons administratively discharged or

Department of Defense promulgated standards setting forth the factors to be considered in determining whether to upgrade a discharge. *See* 32 C.F.R. § 70.3, *et seq.* Under these standards, a discharge may be characterized as improper, *see* § 70.9(b), or inequitable, *see* § 70.9(c).[7]

Principally at issue in this case is the defendants' policy with respect to the citation by applicants of past "equitable" decisions. The regulations state that when an applicant cites a prior equitable decision granting an upgrade as binding on the Board:

> the decisional document shall note that the DRB is not bound by its discretionary decisions in prior cases under the [equitable standards]. However, the principles cited by the applicant, and the description of the relationship of the principles to the applicant's case, shall be considered under the equity standards and addressed ...

32 C.F.R. at § 70.8(e)(iii)(D).

The regulations, thus, compel the Boards to respond to the substantive "issue" raised by citation of a prior case, but do not compel the Boards to cite differing facts or circumstances if a different result is reached. The regulations elsewhere make explicit the Department's position regarding prior equitable decisions:

The primary function of the DRB is to exercise its discretion on issues of equity by reviewing the individual merits of each application on a case-by-case basis. Prior decisions in which the DRB exercises its discretion to change a discharge based on issues of equity (including the factors cited in such decisions or the weight given to factors in such decisions) do not bind the DRB in its review of subsequent cases because no two cases present the same issue of equity.

32 C.F.R. at § 70.9(b)(3)

Alone among the defendants named in this suit, the Army, however, has voluntarily promulgated its own DRB regulations obligating it to follow cited equitable cases or to distinguish them. 32 C.F.R. § 581.2, Appendix B, § 4(k) (1983).[8] Accordingly, this regulation separates the official policy of the Army from that of the Navy or Air Force, with respect to the central issue of this case.

The Department of Defense regulations governing the procedures to be employed by Boards, including those governing the treatment of cited past decisions, grew out of a prior lawsuit between veterans' groups and the defendants in this action. *Urban Law Institute of Antioch College v. Sec. of Defense*, Civ. No. 76–0530 (D.D.C.) (hereafter, "Urban Law"), culminated in two stipu-

released from active military, naval, or air service under other than honorable conditions; and (B) any such person shall be afforded an opportunity to apply for such review under such section 1553 for a period of time terminating not less than one year after the date on which such uniform standards and procedures are promulgated and published.

7. Review for "propriety" looks to whether a discharge was illegal when it was given, or has effectively been rendered illegal by subsequent policy changes made expressly retroactive to the type of discharge at issue. Review for equity looks to whether, considering all the factual circumstances surrounding an applicant's history and service record, as well as current service policy, an otherwise proper discharge ought to be upgraded as a matter of equity. Only discharges granted under the equitable standards are at issue here, for the defendants state that they consider themselves bound to follow, dis-

tinguish or overrule prior cases involving the propriety of a discharge. *Def.Mem.Obj. to Pl. Motion for Summ Jmt.*, at 3–4.

8. This regulation provides:

As a general matter, like cases should receive like treatment. However, the existence of certain similarities between a particular case and a past case decided by a Board does not necessarily require that the two be decided identically because there may be differences that require differing results. For example, differing results may be compelled by factual distinctions, differing equities, changes in policy, the credibility of witnesses and other evidence.

32 C.F.R. § 581.2, App. B, ¶ 4(K). The parties agree that by adopting this regulation, the Army has "stated (that it is the) policy of the Army DRB ... to follow cited cases or to distinguish them." *Pl. Reply Mem.*, at 5 (footnote omitted). *See* Decl. of Col. James Rowe, President of Army DRB, ¶ 11.

lations of settlement which obliged the Boards to adopt the procedures now set forth at 32 C.F.R. § 70.3, *et seq.* These procedures include preparing statements of findings and reasons for all DRB and BCMR decisions; making available and indexing prior board decisions; preparing "decisional documents" according to a specific format; and establishing a Joint Service Review Activity ("JSRA") to review complaints concerning failure to comply with the new decision-making procedures. *See* 4 Mil.L.Rep. 6012–6016 (May-June 1976) (reprinting 1977 stipulation); 44 Fed. Reg. 37771, *et seq.* (August 26, 1982) (reprinting 1982 stipulation). The parties to that litigation, however, expressly left open the question whether federal statutory or constitutional law requires the Boards to follow, distinguish or remove past equitable decisions:

> Plaintiffs take the following position: The DRBs, like other federal agencies, are required by fundamental principles of administrative law and due process to adjudicate similarly situated cases in a similar manner. Plaintiffs further take the position that this principle requires that when an applicant cites a prior DRB decision ... and claims that the DRB should grant an upgrade in his case because the facts are similar to those in the cited cases, the DRB, if it denies relief, must cite differing facts, differing standards, changes in policy, or reasons for disavowing the prior decision. The Department of Defense does not agree that the DRBs must respond in the manner stated by plaintiffs when an applicant cites a case involving an issue of equity.... The parties agree, however, that this disagreement involves a matter of substantive law that is beyond the scope of ... this case.

44 F.R. at 37776, col 3.

The 1982 agreement went on to provide that in the event of a future "final, authoritative judicial decision requiring that prior decisions" "be distinguished in the manner

stated by plaintiffs," 44 F.R. at 37777, col. 1, veterans or their counsel could compel the Boards to rewrite statements of reasons in all past cases which cited other decisions. *Id.* at 37777, col. 1. Having exacted this contractual promise from defendants, plaintiffs now seek the "final, authoritative judicial decision" declaring the Boards bound to follow past Board cases or expressly to distinguish them.

## II. PRELIMINARY ISSUES

At the threshold, I must determine whether, under governing principles of justiciability and reviewability of administrative action, the plaintiffs may properly seek judicial review of the Boards' procedures. The plaintiffs' challenge is framed in an unusual fashion: their claim is that they were subjected to unlawful decisionmaking procedures, yet no plaintiff seeks review of the substance of his adverse Board decision on the grounds that it was rendered arbitrary, capricious, unsupported by substantial evidence, or otherwise unlawful, 5 U.S.C. § 706; *see Kalista v. Sec. of Navy, supra,* 560 F.Supp. at 612 (collecting cases); Lunding, *supra,* at 55–57 (discussing application of substantial evidence standard of review to Board decisions), by the Board's failure to treat an applicant as it had treated a similarly situated, prior applicant.[9] Accordingly, I must first decide whether the Administrative Procedure Act permits plaintiffs to mount this essentially collateral challenge to defendants' procedures.

### A. *Standing*

A party has standing to challenge agency action where he (1) demonstrates an "injury in fact" as a result of the agency action and a substantial likelihood that the relief sought will redress the injury and (2) demonstrates that the injury alleged or "interest sought to be protected ... is arguably within the zone of interests to be protected or regulated by the statute or constitution-

---

**9.** In light of the fact that no plaintiff seeks review of his discharge or the decision denying him an upgrade, defendants' argument that the

six-year statute of limitations found in 28 U.S.C. § 2401(a), or the doctrine of laches, should bar review is wholly without merit and I reject it.

al guarantee in question." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *Rental Housing Association of Greater Lynn v. Hills,* 548 F.2d 388, 389 (1st Cir.1977). "The [administrative] standing inquiry focuses on the substance of the agency action, its adverse impact on the plaintiff and the types of interests that the applicable law is designed to protect." *Capital Legal Foundation v. Commodity Credit Corp.,* 711 F.2d 253, 259 (D.C.Cir.1983).

The plaintiffs' complaint sets forth three broad classes of injury allegedly sustained by plaintiffs: (1) the injury to unsuccessful applicants who retain less than honorable discharges and suffer the associated stigma and pecuniary loss, Amended Complaint ("Compl.") ¶ 30; (2) the injury to unsuccessful applicants who have been denied a fair and consistent administrative process in which to press their cases, Compl. ¶ 31; and (3) the injury to the organizational plaintiffs, who claim that, absent a rule requiring the Boards to distinguish prior decisions not followed, they are unable to represent effectively veterans seeking recharacterization. Compl., ¶ 32.

■ I am satisfied that the seven individual plaintiffs, as well as plaintiff VVA, who asserts standing to litigate the rights of its members who have unsuccessfully applied to the Boards, Compl. ¶¶ 10, 31, *see Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975),[10] possess standing to challenge the procedures at issue here. The primary injury to each individual is having to retain a less than honorable discharge under allegedly unfair and inequitable circumstances—an injury

that falls squarely within the zone of interests protected by the Boards' enabling statutes and regulations, the Administrative Procedure Act and the Due Process Clause. It is less clear that these plaintiffs can demonstrate a "substantial likelihood" that the remedy they seek will redress this injury, for they do not seek review of their assertedly unfair and inequitable Board decisions. But these plaintiffs *do* seek an order effectively compelling defendants to reconsider their applications and to distinguish cited past decisions. Because this relief, if granted, could well lead to new Board decisions on the merits of the plaintiffs' individual cases, I conclude that this branch of the standing inquiry is satisfied. Accordingly, I rule that the individual plaintiffs and VVA, on behalf of its members, have standing in this action.

■ Because plaintiff VEVA has no members, Complaint ¶ 4, it must establish standing to litigate on its own behalf, "to vindicate whatever rights and immunities the association itself may enjoy." *Warth, supra* at 511, 95 S.Ct. at 2211. I cannot conclude that the organization's own interests in the adjudicative process employed by the defendant boards fall arguably within the zone of interests protected by the statutes and constitutional provisions invoked here, for VEVA "cannot apply to a DRB [or BCMR], itself [and] it is incapable of suffering injury at the hands of a DRB [or BCMR]." *National Ass'n of Concerned Veterans, supra,* 487 F.Supp. at 197 (denying standing of veterans' advocacy organization to challenge DRB review standards promulgated by Department of Defense). Because VEVA cannot suffer substantive harm as a result of action by

---

**10.** A membership organization like VVA "has standing to bring suit on behalf of its members when:

(a) its members would otherwise have standing to sue in their own rights; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit."

*Rhode Island Chapter, Associated General Contractors of America v. Kreps,* 450 F.Supp. 338,

346, note 3 (D.R.I.1978) (quoting *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). I rule that VVA satisfies these three requirements and reject defendants' claim that the presence of each individual VVA member is indispensable in this action. Insofar as plaintiffs seek relief on a purely legal question of administrative procedure, the participation of individual members would add nothing to this lawsuit.

the defendant boards, I conclude that it lacks the type of injury necessary to invoke this Court's remedial powers. *Cf. Capital Legal Foundation, supra,* 711 F.2d at 259–260 (advocacy organization may not challenge infringement of its APA-created right to participate in notice and comment rule making process absent substantive injury as a result of rule ultimately promulgated). Accordingly, I hold that VEVA lacks standing to litigate its claims in its own right.[11]

### B. Reviewability

I must next decide whether the Administrative Procedure Act permits plaintiffs to challenge administrative procedures without seeking review of the substantive agency decision rendered pursuant to the allegedly illegal procedures. Defendants argue that the Act limits the Court to determining only whether a particular Board decision was "arbitrary, capricious or unsupported by substantial evidence." *Def. Supp. Memo. in Support of Summ. Jmt.,* at 69.

■ The APA defines agency action as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Because the plaintiffs expressly decline to seek review of any individual discharge decision, the only "action" they can be challenging here is the defendants' failure to promulgate, adopt or observe a rule requiring that binding effect

be accorded prior factually similar decisions, and that distinctions be provided. If this "failure" is properly characterized as agency inaction, then it would be subject to judicial review, for "[u]nder both general equitable powers and powers granted under the APA, courts can insure that statutory rights are not denied by agency inaction." *Caswell v. Califano,* 583 F.2d 9, 15 (1st Cir.1978) (citations omitted). *Cf.* 5 U.S.C. § 706(1). Because plaintiffs argue that the Boards' enabling statutes, as well as the Due Process Clause, entitle them to rely on prior Board cases and to have cited cases distinguished or followed, I will consider the alleged failure of defendants to adopt or observe a rule effectuating that "right" an "agency action" under the APA. Although so characterizing the procedural question here may stretch § 551(13) to its limits, *see Hall v. Equal Employment Opportunity Com'n,* 456 F.Supp. 695, 700 (N.D.Cal.1978), in view of the "hospitable" interpretation to be given the APA's "generous review provisions," *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Shaughnessy v. Pedreiro,* 349 U.S. 48, 51, 75 S.Ct. 591, 593, 99 L.Ed. 868 (1955)); *see also Falzarano v. U.S.,* 607 F.2d 506, 512 (1st Cir.1979), I believe this characterization is consistent with the Act.

The Administrative Procedure Act further provides that:

> Agency action made reviewable by statute and final agency action for which

11. The sole claim that plaintiff VEVA would have standing to litigate is the claim that the Freedom of Information Act, 5 U.S.C. § 552, entitles them to the factual distinctions they seek. This is so because defendants argue that the FOIA "creates a right in *any member of the public* to compel an agency to write a proper statement of findings and reasons in another person's case." *Pl.Mem. In Supp. of Sum. Jmt.,* at 47. While such an allegation is likely sufficient to bring VEVA within the zone of interests of the FOIA, I find that this claim is without merit and must be dismissed. Plaintiffs fail specifically to address this claim at any length in their memoranda or to cite any authority construing the requirements of the FOIA to entitle them to the relief sought here. Indeed, their argument seems to be that it is the FOIA, in combination with the *Urban Law* settlement,

that entitles them to judgment here. To the extent that it is that settlement, and not the FOIA by its own terms, upon which plaintiffs rely, this claim amounts to little more than a request for enforcement of the *Urban Law* settlement. Any such request must be made to the court where that litigation was pending, *e.g., Lee v. Hunt,* 483 F.Supp. 826, 832, (W.D.La.1979), *aff'd,* 631 F.2d 1171 (5th Cir.1980), *cert. den.* 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). And the terms of the settlement are without collateral estoppel effect in this Court because the stipulation is not a decision on the merits. 18 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 4443, at 385 (1981). Accordingly, absent any showing by plaintiffs that the FOIA entitles them to the broad relief sought here, I dismiss that claim entirely.

there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

5 U.S.C. § 704.

Section 704 has been construed to predicate the availability of judicial review upon (1) the exhaustion of administrative remedies and (2) the existence of a final agency action. *See, e.g., Association of National Advertisers, Inc. v. F.T.C.,* 627 F.2d 1151, 1178 (D.C.Cir.1979) (Leventhal, J., concurring).

*1. Exhaustion*

The defendants vigorously argue that the plaintiffs should be required to exhaust their administrative remedies by seeking BCMR and JSRA review of adverse DRB decisions. They rely on the exhaustion doctrine set forth in *Elton Orchards Inc. v. Brennan,* 508 F.2d 493 (1st Cir.1974), which admonished that requiring litigants to exhaust "prevent[s] the disruption of administrative processes by withholding judicial review until the agency has developed the relevant facts, applied its expertise and exercised the discretion entrusted to it by law," *id.* at 497 (citing *McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969)). Plaintiffs respond that where further resort to agency processes would be "futile," it is well settled that failure to exhaust will not bar judicial review. *See, e.g., id.* at 498; *Von Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir.1980). They argue that where, as here, the Secretary has taken a firm position on the disputed issue, exhaustion would serve none of its customary purposes.

■ I agree that resort to the BCMR and JSRA would, indeed, be futile for the Navy and Air Force plaintiffs, for those two branches of the service have not diverged from the position taken by the Secretary of Defense in the *Urban Law* settlement and embodied in the regulations promulgated pursuant to that agreement. In

light of the Secretary's stated policy, it would surely be futile to require the plaintiffs to seek a reversal of that policy from subordinate entities bound by the Secretary's determination. Likewise, development of a fuller factual record and deference to the Boards' expertise in substantive matters would be of little use where the question is a pure question of federal law. *Cf. Lopez v. Heckler,* 725 F.2d 1489, 1500 (9th Cir.1984). Accordingly, because the individual plaintiffs' failure to exhaust in such a circumstance does not jeopardize the interests protected by the exhaustion doctrine, I rule that the individual Navy and Air Force plaintiffs, as well as VVA on behalf of its former Navy and Air Force members, need not exhaust their administrative remedies.

■ I cannot say with equal certainty, however, that exhaustion would be futile for the Army plaintiffs. For the Army has voluntarily adopted a rule which, according to both plaintiffs and defendants in this action, obligates it to distinguish past cases if they are not followed. *See* 32 C.F.R. § 581.2, Appendix B, ¶ 4; note 8, *supra; Plaintiffs' Reply Memorandum,* at 4 ("one matter on which the parties agree is that the stated policy of the Army DRB is to follow cases or to distinguish them.") (footnote omitted). Given the Army's position on this matter, the Army plaintiffs *might well* secure relief from an adverse DRB decision in which past citations were not distinguished, on the basis of this regulation. The plaintiffs argue that the Army routinely ignores its policy, such that exhaustion would effectively be futile. But I cannot accept the limited evidence before me as sufficient to establish any such systematic violation. Accordingly, I rule that the Army plaintiffs must exhaust their administrative appeals from adverse Army decisions.

*2. Final Agency Action*

■ There would appear to be little question that the "action" of the defendants in failing to adopt the rule plaintiffs seek is "final." The only important ques-

tion relevant to finality here is whether the language of § 704, which states that a "procedural ... action or ruling not directly reviewable is subject to review on review of the final agency action," means that review of procedural "actions" may *only* be had on final substantive review.

I do not read the Act to impose this absolute limitation. The statutory language "not directly reviewable" suggests that Congress did intend that at least some residual category of procedural action (or inaction) be directly reviewable. Where, as here, the interests of efficiency and economy would surely be served by adjudicating in a single proceeding a purely legal question likely to be raised in numerous individual proceedings, direct review would not appear inconsistent with the review scheme embodied in the Act. Further, while the question of law posed in this action would be a proper question for an aggrieved applicant to raise on judicial review of his or her individual Board decision, it is possible

that a court discharging its duty to review the substantive administrative decision under § 706 could do so *without* resolving this question of law.[12] *Cf. Caswell v. Califano, supra,* at 14. Accordingly, not only judicial economy, but the interests of the public and the litigants in resolving this long-contested question, as well, counsel strongly here for directly reviewing the question whether the plaintiffs are entitled by federal law to the declaratory and injunctive relief they seek. *Cf. Metropolitan Property & Liability Ins. Co. v. Kirkwood,* 729 F.2d 61, 63–64 (1st Cir.1984) (even where another remedy exists, declaratory judgment appropriate if alternative is "neither simple nor totally adequate," and efficiency, relief of uncertainty, and public and litigants' interests would be served by declaratory relief). Because I find that review of this legal question would neither subvert nor circumvent the APA framework for review, I will proceed to the merits of the plaintiffs' claims.[13]

**12.** If, for example, the reviewing court reversed an agency determination on another ground, or held that the prior Board decisions cited by the applicant were insufficiently like the applicant's case even to call into question whether any duty to distinguish prior cases obtained, *see, e.g., Blackwell v. Marsh,* 574 F.Supp. 210, 213 (N.D. Ga.1982), the legal issue posed here would not be resolved by that reviewing court.

**13.** The APA also prevents a court from reviewing agency action to the extent that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion." 5 U.S.C. § 701; *see Dugan v. Ramsay,* 727 F.2d 192, 194 (1st Cir.1984). While the defendants have not specifically invoked either of these provisions as a bar to review here, they have argued, through associated doctrines, that judicial review of the defendants' decisionmaking procedures would improperly invade the province of the military, whose authority and autonomy in prescribing discharge review procedures is, in defendants' view, plenary. In arguing that the question before the Court is (1) a political question not susceptible of judicial review and (2) a military decision made unreviewable by the doctrine of *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), defendants are invoking doctrinal variants of the statutory "agency discretion" exception.

Although my discussion of the merits of plaintiff's claims makes plain that I read Congress to have given the defendant Boards considerable discretion in making discharge recharacteriza-

tion decisions, I do not think that this grant of discretion was meant wholly to preclude judicial review of the legality of the procedures employed by the Boards. As Judge Breyer has pointed out, "the fact that an agency enjoys broad discretionary powers does not mean judicial review is forbidden; it simply means that the reviewing court is unlikely to find against the agency for the agency is unlikely to have acted unlawfully." *Dugan v. Ramsay, supra,* at 195 (citations omitted).

Nor do I construe the question presented here to be a nonjusticiable political question, within the meaning of *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and its progeny. The defendants urge that judicial review of this issue would be inappropriate given the "textually demonstrable commitment of the issue to a coordinate political department" and the "lack of judicially discoverable and manageable standards for resolving it." *Def's Supp. Memo* at 56, quoting *id.* at 217, 82 S.Ct. at 710. Defendants offer no explanation as to why the Court could find no manageable standards to resolve this question. No such reason being apparent to the Court, I reject that argument. I likewise reject the notion that resolution of this issue is constitutionally committed to the Executive. For unlike cases which would enmesh a court in numerous "professional military judgments" regarding matters about which the court knows little, *e.g. Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973), this case creates no such risk. To the contrary, plaintiffs

## III. THE CHALLENGED DECISION-MAKING PROCEDURES

The United States Supreme Court has admonished that, while courts must "[o]f course ... determine whether [an] agency complied with procedures mandated by the relevant statutes," *Vermont Yankee Nuclear Power v. Natural Resources Defense Council,* 435 U.S. 519, 549, n. 21, 98 S.Ct. 1197, 1214, n. 21, 55 L.Ed.2d 460, "[a]bsent constitutional constraints or extremely compelling circumstances the 'administrative agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." ' " *Id.* at 543, 98 S.Ct. at 1211, quoting *F.C.C. v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383 (1965), quoting *F.C.C. v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940). Accordingly, in order to grant the relief sought by plaintiffs, I must find a statutory or constitutional command that the defendants adopt a rule obligating them to provide the factual distinctions sought.

Plaintiffs contend that the failure to adopt such a rule violates the Boards' statutory mandate for "uniform treatment of applicants" and the canons of fair decisionmaking embodied in the Administrative Procedure Act and protected by the Due Process Clause. Essentially, plaintiffs argue that these provisions require that the Boards develop an administrative common law of discharge recharacterization, upon which an applicant can rely in seeking relief. Defendants counter that the detailed procedures for decisionmaking and decisionwriting set forth in their regulations satisfy the strictures of the federal statutory and constitutional provisions invoked by plaintiffs. They further argue that compelling them to adopt the rule plaintiffs seek would not only be unwarranted by, but indeed *inconsistent with,* the Boards' statutory mission to balance equitable factors on a case-by-case basis, and would be costly, cumbersome and impractical.

■ On its face, the statute authorizing the creation of BCMRs, 10 U.S.C. § 1552, contains no requirement that the BCMRs provide the factual distinctions plaintiffs seek.[14] Indeed, that section expressly provides that BCMR review be conducted "under procedures established by [the Secretary] and approved by the Secretary of Defense." § 1552(a). Congress having confided in the BCMRs the power and discretion to fashion their own procedures, § 1552 can hardly be the statutory mandate for the rule plaintiffs seek.

---

ask this Court to perform its classic function in the administrative arena: to determine whether an agency created by Congress has acted lawfully.

Finally, I reject the argument that the doctrine enunciated in *Mindes v. Seaman, supra,* bars review of the question raised here. That doctrine is concerned with judicial interference in internal military matters. *See, e.g., Pauls v. Secretary of the Air Force,* 457 F.2d 294 (1st Cir.1972) (question whether court should restrain Air Force from discharging officers); *Cushing v. Tetter,* 478 F.Supp. 960, (D.R.I.1979) (question whether court should enjoin Navy from returning serviceman to his former unit). Here, by contrast, the Court is asked to perform the duty imposed on it by Congress, through the APA, to determine whether congressionally-created administrative bodies have adopted illegal or unconstitutional administrative procedures for dealing with claims by ex-military personnel. Especially where the plaintiffs seek no review of the *substantive* rules employed by the military in making discharge decisions, I find

that no credible risk of impairing military functions is posed by this challenge, *cf. Dugan v. Ramsay, supra,* 727 F.2d at 195 (review of military actions barred when "the very act of reviewing may impede the agency's ability to carry out its functions"), and do not, therefore, apply the *Mindes* test for reviewability. In any event, my decision on the merits of this case renders the nonapplication of *Mindes* of little importance.

**14.** Plaintiffs indicate that they seek a rule requiring the BCMRs to provide factual distinctions "when an applicant argues that relief should be granted in his case because the applicant's case is similar to an earlier case in which the [DRB or BCMR] held that the uniform discharge review standards set forth in 32 C.F.R. § 70.9 required an upgrade in discharge." *Pl. Mem.In Supp. Sum.Jmt.,* at 14. Accordingly, there is no claim that the BCMRs must follow prior BCMR decisions which do not involve application of the uniform standards—a sharply limited class of BCMR decisions in any event.

■ Section 1553, creating the DRBs, does not give these Boards similar license to formulate procedures. The statute expressly requires that DRBs accept evidence, grant applicants a hearing and permit representation by counsel. § 1553(c); *see Wilson v. Secretary of the Navy,* 417 F.2d 297, 298 (3d Cir.1969), *cert. den.* 397 U.S. 1068, 90 S.Ct. 1507, 25 L.Ed.2d 689 (1970). Like § 1552, however, the statute is silent as to whether DRB decisions are to be accorded binding effect and distinguished or followed in the manner plaintiffs describe.

■ In urging that § 1553 does contain such a command, plaintiffs rely heavily on 38 U.S.C. § 3103, the 1977 veterans' benefits legislation that required the DRBs to promulgate the "uniform standards" now codified at 32 C.F.R. § 70.3, *et seq.* The critical language in that statute provides that no benefits shall be paid pursuant to an upgraded discharge "except upon a case-by-case review by the board of review concerned, subject to review by the secretary concerned, under such section, of all the evidence and factors in each case under published uniform standards (which shall be historically consistent with criteria for determining honorable service and shall not include any criteria for automatically granting or automatically denying such change or issuance) ..." 38 U.S.C. § 3103(e)(1). The question raised is whether the requirement of "published uniform standards" to be based on criteria "historically consistent with criteria for honorable service," embodies a command that the DRBs factually distinguish prior cited cases. I conclude that it does not.

The principal purpose of § 3103(e)(1) was "to prevent the award of veterans' benefits to individuals who automatically received upgraded discharges under the clemency programs [for Vietnam veterans] initiated by Presidents Ford and Carter." *National Association of Concerned Veterans v. Secretary of Defense, supra,* 487 F.Supp. at 204 (citing S.Rep. No. 305, 95th Cong., 1st Sess. (1977); H.R.Rep. No. 580, 95th Cong., 1st Sess. (1977); *reprinted at* 1977 U.S.

C.C. & A.N. 2844). In enacting the law and rejecting the special standards for Vietnam era veterans, Congress sought to redress the perceived "large-scale departure from fundamental historic principles for the granting of veterans' benefits which are not being applied even-handedly to all former service personnel," H.R.Rep. 95–580, *reprinted in* 1977 U.S.C.C. & A.N. at 2853–54. Accordingly, it required that "the same criteria for upgrading the discharges of this special class of former service persons as a matter of equity be made available to veterans of all *periods of war,* rather than the carefully prescribed period currently in effect." *Id.* at 2856–57. The legislative history makes plain, then, that § 3103 was principally concerned with the inequity of according only Vietnam veterans favored treatment and not with any lack of decisional consistency in DRB determinations. Plaintiffs vigorously maintain, however, that the requirement that DRBs promulgate "published uniform standards" —for the first time in DRB history, 123 Cong.Rec. H30552 (Sept. 23, 1977) (remarks of Rep. Hammerschmidt)—did more than eradicate the Vietnam preference. They argue that this requirement was a broad mandate for consistency in discharge review that can be achieved only if the Boards are forced to distinguish, follow or overrule prior decisions rendered under these standards.

To be sure, § 3103(e)(1) was intended to standardize the process. Senator Cranston, the bill's architect, noted that the requirement of uniform standards would eliminate both the historical disparities in upgrade results among the services and the DRBs' traditional practice of setting forth review guidelines only in internal, unpublished memoranda. 123 Cong.Rec. S28196 (Sept. 8, 1977) (remarks of Sen. Cranston). But the critical fact is that Congress chose to achieve this evenhandedness by ordering the promulgation of uniform standards to be applied, on an equitable basis, to each case—not by transforming the DRBs, *sub silentio,* into mini-courts of law, bound to reach results according to those reached in prior cases or to parse factual distinctions

in support of a different result. Had Congress wished so drastically to alter the historically equitable nature of DRB review, it is reasonable to assume that it would have so indicated. Instead, the language of § 3103(e)(1) itself (1) prohibits any process that would "automatically" entitle any veteran to an upgrade—as a strictly precedential approach would tend to do by treating each decision as establishing a binding rule of law entitling future applicants to relief—and (2) underscores the equitable, fact-based, nature of each "case-by-case review." Accordingly, I cannot find in 10 U.S.C. § 1553, as modified by § 3103(e)(1), the mandate plaintiffs seek.

 Nor does this reading of the Boards' enabling statutes leave those veterans unfairly treated bereft of redress. For, in addition to pursuing available administrative remedies, any aggrieved applicant may secure judicial review of an adverse determination under § 706 of the APA, which empowers the reviewing court to determine whether the Board's application of the published standards to the applicant's record was arbitrary, capricious, unsupported by substantial evidence or not in accordance with the law. In discharging its obligation, the court would have before it the entire administrative record, including any prior Board decisions cited and submitted to the Board by the applicant, in accordance with the provisions of 32 C.F.R. § 70.8(a)(4)(iv) (requiring that copy of decision cited be attached to application). If, based on the evidence in the record, prior application of the standards, or any other appropriate consideration, the court determined that the Board's application of its standards to the applicant's record was improper or beyond the bounds of the Board's discretion, within the meaning of § 706, that court would be fully able to grant appropriate relief. Notwithstanding the availability of this remedy for any unfair or inconsistent application of the standards,

rising to the level of arbitrary, capricious, unsupported by substantial evidence or not in accordance with law, e.g. Blackwell v. Marsh, supra, plaintiffs would have me declare the failure of a Board to distinguish or follow cited cases to be per se violative of the Boards' enabling statutes and the APA. With respect to the APA, plaintiffs apparently argue that the failure to distinguish is inherently arbitrary. If accepted, however, such a reckoning of the Boards' obligations would subject these agencies to a duty to distinguish stricter than that imposed on courts of law. Finding nothing in the Boards' enabling statutes, or § 706 of the APA, to support this extraordinary result, I reject this argument. While the Boards might well protect their own decisions from judicial reversal by making clear why one applicant is not entitled to the relief given a prior applicant under similar factual circumstances, I cannot find in these statutory provisions a requirement that the Boards adopt the wooden rule of distinctions plaintiffs seek.

 Plaintiffs also argue that § 555(e)[15] of the APA imposes on the Boards a per se duty to distinguish or follow cited cases. That section protects the right of each applicant to be told by the Board why his or her application was rejected. Roelofs v. Secretary of the Air Force, 628 F.2d 594 (D.C.Cir.1980). Plaintiffs claim that this section cannot meaningfully ensure that a reviewing court will be able to determine whether similarly situated applicants have been accorded like treatment, absent the rule they seek.

Courts have consistently held, however, that the reasons requirement imposed by § 555(e) on the Boards is "modest", Roelofs, supra, 628 F.2d at 601, and does not entitle the applicant to "an extensive exegesis of the underlying reasoning," Neal v. Secretary of the Navy, 639 F.2d 1029, 1038

---

**15.** 5 U.S.C. § 555(e) provides:

(e) Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

(3d Cir.1981). Indeed, by its terms, § 555(e) requires only "a brief statement of the grounds for denial."

Significantly, by virtue of the *Urban Law Institute* settlement, the Boards have voluntarily obligated themselves to provide a more extensive and particularized statement of reasons than that required by § 555(e) alone. Indeed, while the DRB regulations do not require the factual distinctions sought by plaintiffs, they do require response to any "issue" or "principle" raised by prior cited cases. *See* p. 1571, *supra.* Yet plaintiffs nonetheless argue that even the rather minimal strictures of § 555(e) are violated by the defendants' failure to provide distinctions from prior decisions. They rely heavily on *Matlovich v. Secretary of the Air Force,* 591 F.2d 852 (D.C.Cir.1978), where the court ordered the Air Force Administrative Discharge Board ("ADB") to explain more fully why, in applying a generalized regulation regarding homosexuality, it had decided not to retain a homosexual serviceman with a superior service record. Such explanation was deemed to be necessary, *inter alia,* to "show the reviewing court ... that the particular airman was not treated differently from others in the same position," 591 F.2d at 860. In *Matlovich,* however, the court predicated its holding on the "absence of articulated standards, policies, or considerations" guiding the Air Force in implementing its umbrella regulation permitting retention of homosexuals under "unusual circumstances." *Id.* at 856. Yet, in this case, the defendants *have* promulgated exactly the published standards found wanting in *Matlovich,* and it is those standards, in tandem with the self-imposed reasons requirements embodied in the defendants' regulations, which amply enable a reviewing court to ensure that similarly situated individuals have been judged under the same standards and that the Board has not been "arbitrary, capricious or unlawful in exercising its discretion whether to [recharacterize a discharge]." *Id.* at 857.

Finally, plaintiffs also cite an impressive array of administrative law cases holding that agencies must follow, distinguish or overrule their own precedent, *e.g. Steeger v. Defense Investigative Service,* 717 F.2d 1402, 1406 (D.C.Cir.1983); *McHenry v. Bond,* 668 F.2d 1185, 1192–93 (11th Cir.1982); *Jones v. Califano,* 576 F.2d 12, 20 (2d Cir.1978), in support of the argument that the APA entitles them to the relief they seek. While the Supreme Court has not yet adopted this rule, *compare e.g., Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 187–88, 93 S.Ct. 1455, 1458–59, 36 L.Ed.2d 142 (1973) *with Secretary of Agriculture v. United States,* 347 U.S. 645, 653, 74 S.Ct. 826, 831, 98 L.Ed. 1015 (1954), all the circuits have articulated a version of this rule, at least where formal agency action is concerned. K. Davis, *Administrative Law Treatise,* § 20.11 at 39 (collecting cases). The First Circuit, for example, has held that an agency may "repudiate" any policy or norm which created a "precedent", so long as "appropriate notice" is afforded and sufficient "clarity of analysis" provided to explain the repudiation. *Public Interest Research Group v. F.C.C.,* 522 F.2d 1060, 1065 (1st Cir.1975). I do not, however, read this sound body of authority to compel the procedure plaintiffs seek. *First,* the defendants *do* apply the identical published standards, or rules of decision, to each case. If the discharge Boards applied new standards to applicants, "without ever saying why", I would agree with plaintiffs that this would be "archetypical of arbitrary and capricious action." *Pl. Memo. In Supp. of Summ. Jmt.,* at 31 (quoting *Catholic Medical Center of Brooklyn and Queens v. N.L.R.B.,* 589 F.2d 1166, 1174 (2d Cir.1978)). But, unlike the cases plaintiffs cite, the Boards do *not* change the substantive rules of decision without explaining why. *Cf. Steeger v. Defense Investigative Service, supra,* 717 F.2d at 1406–07 (agency ignored its rule making attorneys' fees available to successful complainants, without explaining why); *McHenry v. Bond, supra,* 668 F.2d at 119 (agency ignored its medical rule regarding treatment of amnesia episodes,

without explaining why). Where, as here, the agency's statutory mission is to balance equitable factors in case-by-case review, the rule of administrative *stare decisis,* such as there is one,[16] is satisfied where the agency applies identical standards to each case.[17]

*Second,* as Professor Davis notes, the rule regarding agency precedents has been extended only to agencies taking "formal action" under the APA. Davis, *supra,* § 20.11, at 37. The discharge Boards here, however, are made expressly exempt by APA § 554(a) from the requirements of formality embodied in §§ 556 and 557. *See Nicholson v. Brown,* 599 F.2d 639 (5th Cir.1979).[18] Thus, while I hold that the requirement that the Boards apply uniform standards, subject to judicial review, provides a guarantee of consistency sufficient to satisfy the requirements of the APA without eliminating the Boards' discretion altogether, I note that where informal action is concerned, little consistency has been required by courts in the first instance—let alone the obligatory rule of distinctions sought by plaintiffs here.[19]

### C. The Due Process Claim

Plaintiffs next argue that the Due Process Clause of the Fifth Amendment requires the Boards to provide the distinctions they seek.

In order to invoke the protections of due process in the first instance, a party must demonstrate a "legitimate claim of entitlement" to the right he claims. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) This source of entitlement may be shown "by reference to statute, regulation, administrative practice, contractual arrangement or other mutual understanding—that [show that] particularized standards or criteria guide the ... decisionmakers." *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (Brennan, J., concurring). Plaintiffs claim that the uniform standards guiding Board decisions satisfy this requirement and trigger the protection of due process. I agree. Unlike the state system at issue in *Dumschat, supra,*—upon which defendants rely— which accorded Connecticut authorities "unfettered discretion", *id.* at 466, 101 S.Ct. at 2465, in deciding whether to commute an inmate's prison sentence, the federal discharge review process plainly obliges defendants to utilize specified criteria

---

**16.** In addition to conflicting Supreme Court decisions on the question whether agencies are generally bound by the rule of *stare decisis,* scholarly commentary has treated the question as unsettled. *See, e.g.,* Shapiro, *The Choice of Rulemaking or Adjudication in the Development of Administrative Policy,* 78 Harv.L.Rev. 921, 947–52 (1965); Davis, *Administrative Law Treatise, supra,* § 20.12, at 44–45; K. Davis, *Revising the Administrative Procedure Act,* 29 Administrative Law Review 35 (1976); R. Davis, *The Doctrine of Precedent As Applied to Administrative Decisions,* 59 West Va.L.Rev. 111 (1957).

**17.** Plaintiffs argue that unless the defendant Boards are bound by prior *interpretations* given to discharge standards, no sufficient measure of consistency or fairness can be ensured. Yet, in characterizing each equitable application of a standard as a binding precedent, the plaintiffs would effectively collapse the distinction between the "traditional mold of judicial decisionmaking," in which each decision constitutes a rule of law, and "(equity) type judgment[s]" that involve "a synthesis of facts and personal observation filtered through the experience of the

decisionmaker." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 8, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). I therefore reject this characterization.

**18.** In light of the Act's exemption of the Boards from the requirements of formality, plaintiffs' reliance on § 557(c) is puzzling and plainly misplaced.

**19.** Indeed, Professor Davis notes that probably ninety-nine percent of all administrative action, much of which is informal, is not regarded as having precedential value. Davis, *supra,* § 20.12, at 44. Determinations by "high volume" agencies like the Immigration and Naturalization Service and the Social Security Administration are almost never accorded precedential value. *Id.* at 31–33. Such a circumstance may owe to the administrative burden that would be created by requiring such decisionmakers to consider and distinguish past decisions. The defendants in the present action assert that the rule plaintiffs seek would cost $2.5 million to implement in the Navy alone. Aff. of Capt. Charles Clark, at 2.

and to grant a discharge where these criteria indicate that it would be "equitable" to do so. I hold this sufficient to create a protected entitlement and to trigger the inquiry whether any further process is due.

■ I reject the claim, however, that the defendants owe plaintiffs procedural protections in excess of those already afforded. "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979), quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In determining whether further process is required in a given situation, the court must balance (1) the private interest to be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of adding further safeguards; and (3) the government's interest, including the function involved and the financial burdens imposed by addition or substitution of the procedures sought. *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

■ In light of the extensive procedures already afforded plaintiffs, the existing requirement that Boards explain the basis of their decisions and respond to all issues raised by citations to past cases, and the considerable cost involved in implementing the strict rule of distinctions sought by plaintiffs, *see note* 19, *supra*, as well as the fact that, given the existing framework, compelling the Boards explicitly to parse factual distinctions would do little "to minimize the risk of erroneous decisions," *Greenholtz, supra*, 442 U.S. at 13, 99 S.Ct. at 2106, I conclude that the Constitution does not require the Boards to

adopt the highly formalized rule of distinctions sought by plaintiffs.[20]

## IV. CONCLUSION

Judgment is granted as follows. The complaint of VEVA is dismissed for lack of standing and the complaint of the Army plaintiffs is dismissed for failure to exhaust administrative remedies.

There being no genuine issue of material fact with respect to the defendants' obligation to implement the rule sought by plaintiffs, I grant summary judgment to the defendants. This judgment shall in no way prejudice the right of each individual plaintiff to seek judicial review of his adverse Board decision.

---

**20.** Indeed, the rigid rule plaintiffs seek would be especially inappropriate where, as here, the DRBs process over 20,000 applications a year; the DRBs are comprised of non-lawyers; the membership of the panels is continually changing; the proceedings are traditionally nonadversarial; and many veterans appear *pro se* or with

non-lawyer counsel and might be severely disadvantaged were the review process reformed to resemble that of a court. *See generally* Defendants' Exhibits 17–20 (affidavits of DRB and BCMR officers describing the above features of the discharge review process).